Law Office of Peter D. Hoffman, P.C.
Hope Harris, *Pro Hac Vice*
Peter D. Hoffman (PH -8306)
Nikki D. Woods (NW -1380)
Attorneys for Plaintiffs
200 Katonah Avenue
Katonah, NY 10536
(914) 232-2242          phone
(914) 232-2245          facsimile
hh@pdhoffmanlaw.com     e-mail

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M.P., Individually and On Behalf of K.P. [1], a minor under the age of 18 years,<br><br>　　　　　　　　Plaintiffs,<br><br>　　- against -<br><br>CARMEL CENTRAL SCHOOL DISTRICT,<br><br>　　　　　　Defendant. | **15 Civ. 03432 (VLB)**<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

[1]Plaintiffs are not expressly named herein by their given names because of the privacy guarantees provided in the IDEA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. 1232(g) and 34 C.F.R. 99 (hereinafter "FERPA"). All student parties and actors herein are listed by pseudonym. This is done to protect their privacy pursuant to and in the spirit of FERPA. Whereas this action will require the inspection of student records of all student parties herein, Plaintiffs herein seek to protect the identity of all listed student parties by using pseudonyms.

**TABLE OF CONTENTS**

I.    **PRELIMINARY STATEMENT**…………………………………………………1

II.    **STATEMENT OF FACTS**………………………………………………………...1

III.    **ARGUMENT**……………………………………………………………………1

        **POINT I:**    **STANDARD OF REVIEW**………………………………...1

        **POINT II:**    **PLAINTIFF HAS STANDING**…………………………….4

        **POINT III:**    **PLAINTIFFS' ALLEGATIONS IN THE SRO APPEAL ARE NOT OUTSIDE THE PERMISSIBLE SCOPE OF REVIEW**……………………………………………...7

        **POINT IV:**    **PLAINTIFF IS ENTITLED TO TUITION REIMBURSEMENT**…………………………………………8

              **A. PRONG I – CCSD FAILED TO OFFER K.P. A FAPE IN THE 2012-13 AND 2013-14 SCHOOL YEARS**…………11

                **i.**    **CCSD Committed Procedural Violations in the 2012-13 School Year**………………….................11

                **ii.**    **The 2012-13 IEP Was Not Reasonably Calculated To Confer Educational Benefit on K.P.**……...……15

                **iii.**    **CCSD Committed Procedural Violations in the 2013-14 School Year**………………………………..20

                **iv.**    **The 2013-14 IEP Was Not Reasonably Calculated To Confer Educational Benefit on K.P.**…………20

              **B. PRONG II – FRANKLIN WAS THE APPROPROATE PROGRAM FOR K.P. DURING THE 2012-13 SCHOOL YEARS**……………………………………………...21

                **i.**    **The Franklin Program Was Reasonably Calculated To Confer Educational Benefit on K.P.**…………..22

     **ii.**  **Franklin Satisfies the LRE Provisions of IDEA and**
        **The District Placements Do Not**…………………23

    **C. PRONG III – THE EQUITIES FAVOR PLAINTIFFS**…24

**VI.**  **CONCLUSION**…………………………………………………………25

# TABLE OF AUTHORITIES

*Cases*

*A.C. ex rel. M.C. v. Board of Educ. Of Chappaqua Cent. Sch. Dist.*,
    553 F. 3d 165 (2d Cir. 2009)……………………………………………………….2, 14

*A.D. v. New York City Dep't of Educ.*,
    2013 U.S. Dist. LEXIS 38757, *17 (SDNY Mar. 19, 2013)…………………………..…11

*Arlington Central School District v. D.K. and K.K. obo C.K.*,
    2002 U.S. Dist. LEXIS 21849, *27 (SDNY 2002)………………………………………16

*Board of Educ. of the Hendrick Hudson Central School District v. Rowley*,
    458 U.S. 176 (1982)……………………………………………………………….2, 3, 9, 11, 16

*Cerra v. Pawling Cent. Sch. Dist.*,
    427 F. 3d 186 (2d Cir. 2005)……………………………………………………..3-4, 9, 11

*County School Board of Henrico County, Virginia v. Z.P.*,
    399 F. 3d 298 (4th Cir. 2004)………………………………………………………...16, 22

*Emery v. Roanoke City Sch. Bd.*,
    432 F. 3d 294 (4th Cir. 2005)………………………………………………………...…6

*E.M. v. N.Y.C. Dep't of Educ.*,
    758 F. 3d 441 (2d Cir. 2014)……………………………………………………………4, 5, 6

*E.S. v. Katonah-Lewisboro Sch. Dist.*,
    742 F. Supp. 2d 417 (SDNY 2010),
    *aff'd* 2012 U.S. App. LEXIS 13811 (2nd Cir. 2012)………………………………2, 21, 23

*Evans v. Board of Educ. of Rhinebeck Cent. Sch. Dist.*,
    930 F. Supp. 83 (SDNY 1996)………………………………………………………………2

*Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*,
    510 U.S. 7 (1993)………………………………………………………………..9, 10, 22

*Forest Grove Sch. Dist. v. T.A.*,
    557 U.S. 230, 129 S. Ct. 2484 (2009)…………………………………………………9, 23

*Frank G. v. Board of Educ. of Hyde Park*,
    459 F. 3d 356 (2006)…………………………………………………………………9, 10, 22

*Gagliardo v. Arlington Central School District*,
    489 F. 3d 105 (2007)………………………………………………………………....2, 10, 22

*Gregory K. v. Longview Sch. Dist.*,
    811 F. 2d 1307 (9th Cir. 1987)………………………………………………….…..3

*Heldman v. Sobol*,
    962 F. 2d 148 (2d Cir. 1992)…………………………………………………………..4, 5

*Jennifer D. as Parent of Travis D. v. New York City Department of Eduction*,
    550 F. Supp. 2d 420 Fedl. Ed Law Rep. (SDNY 2008)…………………………...……10

*J.S. v. Scarsdale Union Free Sch. Dist.*,
    826 F. Supp. 2d 635 (SDNY 2011)……………………………………………………….2

*Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*,
    397 F. 3d 77 n.3 (2d Cir. 2005)……………………………………………………………2

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)……………………………………………………………………….4

*Malone v. Nielson*,
    474 F. 3d 934 (7th Cir. 2007)…………………………………………………………...7

*M.H. et al. v. NYC Dep't of Education*,
    2012 U.S. App. LEXIS 13394, *85 (2d Cir. 2012)………………………………………2, 7

*M.M. v. Sch. Dist.*,
    303 F. 3d 523 (4th Cir. 2002)……………………………………………………....16, 22

*M.O. ex rel. New York City Dep't of Educ.*,
    Docket No. 14-1473-cv (2d Cir. July 2015)…………………………………..……17, 19

*Mrs. B. v. Milford Bd. Of Educ.*,
    103 F. 3d 1114 (2d Cir. 1997)……………………………………………………………23

*M.S. v. Yonkers Bd. Of Educ.*,
    231 F. 3d 96 (2nd Cir. 2000)…………………………………………………………...22

*N.R. v. Dep't of Educ. of the City Sch. Dist. of N.Y.*,
    2009 U.S. Dist. LEXIS 27273 (SDNY Mar. 31, 2009)…………………………………..23

*Piedmont Behavioral Health Center, LLC v. Stewart*,
    413 F. Supp. 2d 746 (2006)……………………………………………………….…6

*P.K. et al v. NYC Dep't of Education*,
    2013 U.S. App. LEXIS 10477 11-12 (2d Cir. 2013)………………………………………7

*R.B., et al. v. NYC Dep't of Educ.*,
    713 F. Supp. 2d 235 (SDNY 2009)………………………………………………....25

*R.E. v. New York City Dep't of Educ.*,
    694 F. 3d 167 (2d Cir. 2012)…………………………………………………………14, 16

*School Committee of the Town of Burlington v. Department of Education of MA*,
    471 U.S. 359 (1985)…………………………………………………………3, 9, 10, 25

*S.F. and Y.D. v. New York City Dept. of Educ.*,
    2011 U.S. Dist. LEXIS 129672, 11 (SDNY Nov. 9, 2011)…………………………8, 14, 18

*S.W. v. New York City Dep't of Educ.*,
    646 F. Supp. 2d 346 (SDNY 2009)……………………………………………....…4, 5, 6, 23

*T.Y. v. N.Y.C. Dep't of Educ.*,
    584 F. 3d 412 (2d Cir. 2009)……………………………………………………………9

*Walczak v. Florida Union Free School District*,
    142 F. 3d 119 (2nd Cir. 1999)………………………………………………3, 15-16, 22, 23

*W.S. and L.S. on behalf of C.S. v. Rye City School District*,
    454 F. Supp. 2d 134 (SDNY 2006)…………………………………………………...…23

## *Administrative Decisions*

*Application of the Board of Education of the Bay Shore Union Free School District*,
    Appeal No. 00-080…………………………………………………………………………10

*Application of the Board of Education of the Carmel Central School District*,
    Appeal No. 05-015…………………………………………………………………………10

*Application of a Child with a Disability*,
    Appeal No. 00-0086………………………………………………………………………..10

## *Statutes and Regulations*

8 NYCR 200.4(b)(v)…………………………………………………………………………..14

8 NYCR 200.4(e)(ii)…………………………………………………………………………....8, 14, 18

8 NYCR 200.22(b)(2)…………………………………………………………………………14

20 U.S.C. §1400…………………………………………………………………………………..1

20 U.S.C. § 1401(9)………………………………………………………………………...……22

20 U.S.C. § 1401(a)(16)……………………………………………………………………….23

20 U.S.C. § 1412(a)(5)………………………………………………………………………...23

20 U.S.C. § 1415(b)(1)………………………………………………………………………11, 20

20 U.S.C. § 1415(f)(3)(B)……………………………………………………………………………..7

20 U.S.C. § 1415(f)(3)(E)(ii)……………………………………………………………………...11, 20

34 CFR § 300.148……………………………………………………………………………………9

34 CFR § 300.302…………………………………………………………………………………..23

## I.   PRELIMINARY STATEMENT

The Parent should be awarded full reimbursement for tuition and boarding costs for K.P.'s attendance at Franklin Academy ("Franklin") for the 2012-13 and 2013-14 school years. The record shows that 1) M.P. has standing to receive tuition reimbursement for K.P.'s attendance at Franklin in the 2012-13 and 2013-14 school years; (2) Plaintiffs' allegations in the State Review Officer ("SRO") appeal are not outside the permissible scope of review; (3) CCSD did not offer K.P. a Free Appropriate Public Education ("FAPE") in the 2012-13 or 2013-14 school years; (4) the 2012-13 and 2013-14 Individualized Education Programs ("IEP") were not reasonably calculated to confer educational benefit on K.P.; (5) because of the District's refusal to provide FAPE, M.P. was forced to place K.P. in a private school for the 2012-13 and 2013-14 school years; (6) Franklin was an appropriate placement for K.P. in the 2012-13 and 2013-14 school years; (7) the Franklin boarding program was appropriate for K.P. in the 2012-13 and 2013-14 school years; and (8) the equities strongly support a finding for reimbursement for full tuition and board for both school years.

## II.   STATEMENT OF FACTS

In order to avoid duplication, Plaintiffs respectfully refer the Court to the accompanying Statement of Uncontroverted Facts[1] pursuant to Local Rule 56.1 submitted herewith for a full recitation of the undisputed facts relevant to this motion, as well as the administrative record.

## III.   ARGUMENT

### POINT I: STANDARD OF REVIEW

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 et. seq.,

---

[1] Plaintiff's Statement of Uncontroverted Facts is hereinafter referred to as "PSUF" followed by the paragraph number

provides that review by federal courts of the state educational agency decisions of such cases is de novo review, noting that summary judgment in IDEA cases such as this is "in substance an appeal from an administrative determination, not a summary judgment." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n. 3 (2d Cir.2005) (internal quotation marks omitted). This Court has held that deference should be paid to the findings and decision of the state educational agencies, such as the New York State Review Officer ("SRO"). *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 658 (S.D.N.Y. 2011); *Gagliardo v. Arlington Central School District*, 489 F. 3d 105, 113 (2007) (quoting *Board of Educ. of the Hendrick Hudson Central School District v. Rowley*, 458 U.S.176, 208 (1982). However, "the role of federal courts in reviewing state education decisions under the IDEA is circumscribed." *A.C. ex rel. M.C. v. Board of Educ. Of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009), *quoting Gagliardo*, 489 F.3d at 112. Courts must refrain from deferring to the SRO's conclusions if the findings and conclusions of the SRO are unsupported. In order to make this determination, Courts should perform an exacting review and analysis of the SRO's conclusions. *See Evans v. Board of Educ. of Rhinebeck Cent. Sch. Dist.*, 930 F. Supp. 83 (S.D.N.Y. 1996) (Court found the administrative decision was not entitled to deference, as the decision was not supported by the record); *see E.S. et al. v. Katonah Lewisboro Central School District*, 742 F. Supp. 2d 417, 439-40 (S.D.N.Y. 2010), *aff'd* 2012 U.S. App. LEXIS 13811 (2nd Cir. 2012) (S.D.N.Y. 2010) (Court overturned part of SRO's decision after a careful analysis of the IEP).

A state administrative finding does not merit deference unless it is "reasoned and supported by the record," *M.H. v. New York City Dep't of Educ.*, 2012 U.S. App. LEXIS 13394 (2d Cir. June 29, 2012). In *M.H.*, the Second Circuit agreed with the district court that the SRO's decision, which took only the Department of Education's evidence into account, did not warrant

deference. "How *much* deference to give state educational agencies . . . is a matter for the discretion of the courts[.]" *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1993) citing *Gregory K. v. Longview Sch. Dist.* 811 F.2d 1307, 1311 (9th Cir.1987). Therefore, this Honorable Court is also free to accept or reject the findings of the administrative agencies. Here, the SRO did not address the second and third prongs of the *Burlington* test,[2] and thus should not be afforded deference because the SRO's review was not "careful and thorough." *Walczak v. Florida Union Free School Dist.,* 142 F.3d 119, 129 (2d Cir., 1998). Further, the SRO's decision was not based on substantial evidence due to the SRO's failure to credit significant evidence clearly established by Plaintiffs at the Impartial Hearing. As the record will show, the SRO was wrong on the merits. Moreover, the SRO largely ignored or missed substantial evidence in the form of the testimony by Plaintiffs' witnesses and exhibits. As such, Plaintiffs respectfully request that this Court reject the findings of the SRO "in whole," *Ojai* at 1473-1474.

The Court should make an independent decision based on the preponderance of the evidence, giving "due weight" to the factual determinations made during the state administrative process. *See Board of Educ. Of the Hendrick Hudson Central School District* v. *Rowley,* 458 U.S. 176, 206-208 (1982); *Walczak* v. *Florida Union Free School Dist.,* 142 F. 3d 119, 129 (2d Cir., 1998). However, after careful consideration of the findings on each material issue during the state administrative process, "the court-is free to accept or reject the findings, in part or in whole." *See Burlington School Comm v. Department of Education,* 736 F. 2d 773, 791-792 (1st

---

[2]A district may be required to reimburse parents for their expenditures for private school educational services obtained for a student by the parents, if (1) the services offered by the district were inappropriate (2) the services selected by the parent were appropriate and (3) equitable considerations support the parent's claim *School Committee of the Town of Burlington Massachusetts v. Department of Education of the Commonwealth of Massachusetts,* 471 U.S. 359, 370 (1996).

Cir., 1984) *affd on other grounds, 471* U.S. 359 (1985). See also, *Cerra v. Pawling Central School Dist.,* 427 F. 3d 186, 191 (2d Cir., 2005). Here, the preponderance of the evidence in the underlying administrative Record supports a finding that CCSD failed to offer K.P. a FAPE in the 2012-13 and 2013-14 school year and that Plaintiff M.P. is entitled to tuition reimbursement.

## POINT II: PLAINTIFF HAS STANDING

Under Article III, Section 2 of the United States Constitution, the jurisdiction of federal courts is limited to "Cases" and "Controversies," requiring that parties seeking to bring suit in federal court must establish Article III standing in order to assert their claims. *E.M. v. N.Y.C. Dep't of Educ.,* 758 F.3d 442, 449 (2d Cir. 2014). The Supreme Court in *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992), established three requirements for constitutional standing. First, the Plaintiff must have suffered an "injury in fact." *Id.* at 560. Second, "there must be a causal connection between the injury and conduct" that the plaintiff is complaining about. *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (quotation marks omitted); *see also E.M.,* 758 F.3d at 450. Here, this standard is met, as M.P. suffered a financial injury, M.P. and K.P. were injured by CCSD's denial of FAPE, CCSD's conduct clearly caused this financial injury and denial of FAPE, and this injury can be redressed by a favorable decision to Plaintiffs in this matter.

The court in *S.W. v. New York City Dep't of Educ.,* 646 F.Supp.2d 346 (S.D.N.Y., 2009) faced the issue of whether a parent who had not paid the tuition for her son's placement at a private school was entitled to bring suit under the IDEA for payment of tuition by the public school. *Id.* In addressing the issue of whether the parent had suffered an injury sufficient to establish standing, the court held that the denial of a FAPE or of a procedural right created by the IDEA "constitutes an injury sufficient to satisfy the standing requirement" *Id* at 358*.; see also*

Page **4** of 25

*Heldman v. Sobol,* 962 F.2d 148, 154-56 (2d Cir. 1992). A claim for denial of FAPE can be pursued by the parent of the deprived child. *S.W.* at 358; *Heldman,* 962 F.2d at 154-56. The second circuit in *E.M. v. New York City Dep't of Educ.,* 758 F.3d 442 (2d Cir. 2014) agreed that a plaintiff's "claimed denial of FAPE constitutes an injury in fact" for standing purposes. *Id.* at 456. The court in *S.W.* found that the injury of a denial of FAPE is redressable by the school district paying for the appropriate private education, thereby providing the student with a FAPE at public expense. *Id.* at 359.[3] Here, M.P. is claiming that K.P.'s right to a FAPE was denied by CCSD, thereby clearly meeting the first standing requirement of an injury in fact. *S.W.* at 359; *Heldman* at 154-56; *E.M.* at 456. It is also clear that this injury was directly caused by the conduct of the District in denying K.P. a FAPE. M.P. also suffered a financial injury in that she paid for K.P.'s tuition at Franklin in 2012-13 and 2013-14. *See* PSUF, ¶ 192 – 197; ECF Doc. No. 1, Exhibit 3. M.P.'s financial injury was caused by CCSD's failure to provide K.P. a FAPE and is redressable by ordering CCSD to reimburse M.P. for tuition. Even if there were no financial injury, this relief would redress the denial of FAPE by requiring the district '"to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.'" *S.W.,* 646 F.Supp.2d at 359, *citing Burlington* at 370-71. Plaintiff's financial injury and the injury of K.P. being denied FAPE at public expense would be redressed if CCSD were ordered to pay for K.P.'s appropriate education at Franklin. M.P.'s enrollment contracts (P-DD) clearly created a financial obligation for M.P. and CCSD's reimbursement of that money would redress her injury. The Court in *E.M.* found that the enrollment contract between the parent and the school, which obligated the parent to pay tuition

_____

[3]The Court did not decide "whether the denial of a *publicly funded* FAPE, standing alone, is an injury that is 'redressable' by an order requiring the [district] to pay the child's private-school tuition," *Id.* at 456, because it decided the case on narrower grounds. However, the Court did not reverse the *S.W.* holding regarding redressability.

by clear and unambiguous language, created a financial obligation that "itself constitutes an 'injury in fact,' one that is 'redressable' by the direct tuition payment she seeks." *Id.* at 456. The Court held that, although the parent had not paid out of pocket for tuition, payment of tuition by the public school would redress her injury. *Id.* M.P.'s contract is evidence of financial injury.

In his Pre-Motion Conference letter (ECF Doc. No. 5), counsel for CCSD raised a Fourth Circuit case, *Emery v. Roanoke City Sch. Bd.,* 432 F.3d 294 (4th Cir. 2005), to support its position that Plaintiffs here lack standing. Aside from the fact that this case is not a Second Circuit case and is not authoritative, this case is distinguishable from the present facts and has even been distinguished by this Court in *S.W.,* 646 F.Supp.2d at 359. In *Emery,* the court found a lack of redressability because the plaintiff suffered no out of pocket loss for tuition payment and any recovery would be a windfall. *Id.* In *S.W.* the court found that there would be no windfall to the plaintiff since the education had not yet been paid for. *Id.* at 359. Similarly, in *E.M.,* the Court found that the tuition payment that had been made on the student's behalf was a loan provided by the school to the plaintiff and, if she were to receive tuition reimbursement, there would be no windfall, as she would be obligated to repay the loan. *Id.* at 460. Here, it cannot be said that M.P. would receive a windfall if her tuition payments to Franklin were reimbursed (PSUF, ¶ 192 – 197; ECF Doc. No. 1, Exhibit 3). Further, even if M.P. were not the beneficiary and her mother were still alive, there would still be no windfall to M.P., as the money would go back into the same account it came out of in the same way that a loan is repaid. Counsel for CCSD also raised a District Court case from the Fourth Circuit, *Piedmont Behavioral Health Center, LLC v. Stewart*, to support its position that Plaintiffs here lack standing. This case is distinguishable from the present facts because in that case the parties bringing suit under the IDEA were not claiming a denial of FAPE and therefore did not suffer an injury for standing purposes. This is

clearly distinguishable from the present case, where Plaintiffs are claiming a denial of FAPE. Further, counsel for CCSD cites to a Seventh Circuit case, *Malone v. Nielson,* 474 F. 3d 934 (7th Cir., 2007). This case is distinguishable from the present facts because in *Malone*, the parents had not expended resources for the child's private education whereas here, as explained above, M.P. suffered a financial injury in paying tuition at Franklin in 2012-13 and 2013-14 due to CCSD's denial of a FAPE. M.P. has standing to bring a claim for reimbursement of tuition paid to Franklin for the 2012-13 and 2013-14 school years due to Franklin's failure to provide FAPE.

### POINT III: PLAINTIFFS' ALLEGATIONS ARE WITHIN THE SCOPE OF REVIEW

The statutory language providing that "the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice," 20 U.S.C. § 1415(f)(3)(B), does not require that these issues be explicitly spelled out in a specific section of the complaint and allows for broad language to encompass more specific complaints. *P.K. et al v. NYC Dep't of Education*, 2013 U.S. App. LEXIS 10477, 11-12 (2d Cir. 2013); *see also M.H. et al,* 2012 U.S. App. LEXIS 13394 at **85. Here, the IHO stated that, under the totality of the circumstances, M.P. could establish FAPE was not provided even if every deficit was not listed specifically in her complaint (T: 617-19). Here, M.P.'s Impartial Hearing Demand complaints encompassed more specific complaints. M.P. presented evidence at hearing of CCSD's inappropriate IEPs for the 2012-13 and 2013-14 school years, which failed to provide K.P. with FAPE. Failure to plead specific issues that led to denial of FAPE in the complaint did not prevent M.P. from raising such issues at hearing in order to prove denial of FAPE.

Plaintiffs disagree with the SRO's finding that "parents assert for the first time on appeal that the district failed to offer the student a FAPE for the 2012-13 school year because the August 2012 Committee on Special Education ("CSE") relied upon outdated or insufficient

evaluative information, the parents' untimely receipt of the August 2012 IEP, and the CSE's

failure to discuss or conduct an FBA or to develop a BIP for the student" (SRO 10, fn 15). The

SRO erred in refusing to consider these issues. As described above, language in the Impartial

Hearing Demand that pled a denial of FAPE in the 2012-13 and 2013-14 school years allowed

Plaintiffs to prove specific deficits at hearing that led to a denial of FAPE. These issues were not

raised for the first time on appeal. Plaintiffs asserted the position that the district failed to offer

the student a FAPE for the 2012-13 school year because the August 2012 CSE relied upon

outdated or insufficient evaluative information in their Post Hearing Brief (*see* Plaintiff's Post

Hearing Brief, hereinafter "PPHB", p. 7-8) and testified to this fact at hearing (T: 1277).

Therefore, this issue was not raised for the first time on appeal and should have been considered

on appeal. Plaintiffs asserted their position concerning untimely receipt of the 2012-13 IEP in

their Post Hearing Brief, stating "MP received the final IEP (D-10) during the first or second

week of September, yet CCSD started classes in early September, indicating there was no IEP in

effect at the beginning of CCSD's school year (T: 1274-75). Thus, CCSD did not "have an IEP

'in effect' at the beginning of the school year," *S.F. and Y.D. v. New York City Dept. Of Educ.,*

2011 U.S. Dist. LEXIS 129672, 11 (S.D.N.Y. Nov. 9, 2011), in violation of the IDEA and 8

NYCR 200.4(e)(ii)" (PPHB, p.8). Further, Plaintiff M.P. testified to this issue at the impartial

hearing (T:1274-75). Therefore, this issue was not raised for the first time on appeal. Finally,

Plaintiffs certainly raised the CSE's failure to discuss or conduct an FBA or to develop a BIP for

K.P. in the Post Hearing Brief (*See* PPHB, p. 8-9) and M.P. testified to this issue at the impartial

hearing (T: 1280-81). Therefore, this issue was not raised for the first time on appeal. The SRO

erred in failing to address these issues raised by the Plaintiffs at hearing and in PPHB.

## POINT IV: PLAINTIFF IS ENTITLED TO TUITION REIMBURSEMENT

FAPE "consists of educational instruction specifically designed to meet the *unique needs* [emphasis added] of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, at 188. One critical means of enforcing a child's rights to a FAPE is the ability of parents to seek reimbursement from a school district for a private placement of the child if the district failed to provide the child a FAPE. 34 CFR §300.148. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 129 S. Ct. 2484, 2496 (2009); *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12 (1993); *Burlington* at 369. A district may be required to reimburse parents for their expenditures for private school educational services obtained for a student by the parents, if the following three prongs are met: (1) the services offered by the district were inappropriate, (2) the services selected by the parent were appropriate; and (3) equitable considerations support the parent's claim. *See Burlington* at 370; *see also Florence County School District Four* v. *Carter*, 510 U.S. 7, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993); *see also Frank* G. *v. Board of Educ.*, 459 F. 3d 356 (2d Cir., 2006), *cert. denied Board of Educ.* v. *Frank* G., 128 S. Ct. 436 (2007). Courts base the decision to grant such reimbursement on whether the school district followed the procedural requirements of IDEA,[4] whether the services offered by the school district were "reasonably calculated to enable the child to receive educational benefits" and whether the private schooling obtained by the parents was appropriate to the child's needs." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005) (citation and internal quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir.2009). A Court may then take into account equitable factors when it determines the extent of reimbursement. *Carter* at 7; *Burlington* at 369-70.

---

[4] The importance of IDEA's procedural provisions was highlighted by the Supreme Court. *Rowley*. at 206.

The fact that the facility selected by the parents to provide special education services to the child is not approved as a school for children with disabilities by the State Education Department is not dispositive or a bar to the parents' claim for tuition reimbursement. *See Florence County School District Four v. Carter*, 510 U.S. 7, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993); *Application of the Board of Education of the Carmel Central School District*, Appeal No. 05-015. Likewise, the parents' unilateral placement need not have certified special education teachers or an IEP for the disabled student in order to qualify as appropriate. *Carter*, 519 U.S. at 14; *Application of Child with a Disability*, Appeal No. 00-0086; *Application of the Board of Education of the Bay Shore Union Free School District*, Appeal No. 00-080. In *Jennifer D. as Parent of Travis D. v. New York City Department of Education*, 550 F. Supp. 2d 420, 233 Fedl. Ed Law Rep. (S.D.N.Y. 2008), the Court noted that parents who believe that their child's IEP fails to meet the requirements of the IDEA may, at their own financial risk, enroll their child in a private school, and seek retroactive reimbursement of tuition from the state, citing the three prong *Burlington* test. *Burlington* at 370; *Gagliardo v. Arlington Central School District*, 489 F. 3d 105, 111-12 (2007). In *Jennifer D.*, 550 F. Supp. 2d 420, 233 L. Ed Law Rep. (S.D.N.Y. 2008), the Court found the parent had carried her burden to establish the unilateral placement program was specially designed to meet her son's needs because it provided a sufficiently structured environment with specific services, citing *Frank G. v. Board of Educ. of Hyde Park*, 459 F. 3d 356, 367 (2006). "Courts assessing the propriety of a unilateral placement consider the 'totality of the circumstances' in determining whether that placement reasonably serves a child's individual needs." *Gagliardo* 489 F. 3d at 112, citing *Frank gG*. 459 F.3d at 364-65. To qualify for reimbursement, parents "need only demonstrate that the placement provides educational

instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." *Id.*

### A. PRONG I–CCSD FAILED TO OFFER K.P. FAPE IN 2012-13 AND 2013-14

FAPE is offered when (a) the board of education complies with the procedural requirements set forth in the IDEA and (b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits. *Board of Educ. of the Hendrick Hudson Cent. School District v. Rowley*, 458 U.S. 176, 206-07 (1982); *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005).

#### i. CCSD Committed Procedural Violations in the 2012-13 School Year

A procedural violation entitles the petitioner to reimbursement if the violation amounts to a denial of a FAPE because it: (1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a [FAPE]; or (3) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii); *A.D. v. New York City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 38757, *17 (S.D.N.Y. Mar. 19, 2013) (Internal quotations omitted).[5] CCSD's procedural violations impeded M.P.'s opportunity to participate in the decision-making process for the 2012-13 IEP and deprived K.P. of educational benefits, amounting to a denial of FAPE.[6] *Id.* Plaintiffs disagree with the SRO's determination that, "although the evidence in the hearing record supports the parents' arguments that the CSE failed to keep the parents informed about potential out-of-district placements or a program search, the weight of the evidence in the hearing record supports the IHO's determination" (SRO 12). As shown below, the weight of the evidence in the hearing record supports the Plaintiffs'

---

[5] "Multiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not." *Id.*

[6] *See* 20 U.S.C. § 1415(f)(3)(E)(ii); see also 20 USC § 1415(b)(1).

contention that the CSE prevented substantial parental participation at the CSE meetings held for the purpose of developing the 2012-13 IEP. The SRO found that "the parents were afforded the opportunity to participate in the development of the August 2012 IEP and to express and present their concerns," (SRO 14), yet the SRO completely ignores the fact that the District never addressed any of the Plaintiffs' concerns or did anything to incorporate the Plaintiffs' concerns in creating K.P.'s IEP (T: 1250). CCSD impeded Plaintiff's opportunity to participate in the decision-making process by failing to consider outside placements despite Plaintiff's requests and by failing to "effectively communicate the status of any out-of-district program search to the parents." (SRO 14). Plaintiffs disagree with the SRO's finding that this procedural inadequacy by the District did not impede Plaintiffs' opportunity to participate in the decision-making process or cause a deprivation of educational benefits (SRO 14). Indeed, Plaintiffs have shown that the defective program search, in addition to the other procedural violations by the District, impeded K.P.'s ability to derive a FAPE from the program offered by the District.

At the CSE annual review meeting held on May 10, 2012 CSE, Chairperson Lou Valesey failed to perform a program search or inform M.P. of placement options (PSUF ¶ 56-60). The IHO's finding that Mr. Valesey explored other potential placements cannot stand in light of the fact that no referral packets were sent out (IHO 58; D-63; T: 269). The IHO found that Mr. Valesey determined the out of district placements he was considering were inappropriate for K.P. "based on his knowledge" (IHO 58) of K.P.'s profile, yet the CSE did not request Plaintiff's consent to perform testing at the May or June 2012 CSE's (T: 1249). CCSD could not have made this determination without sending out referrals and performing evaluations for K.P. Mr. Valesey substituted his judgement for that of the Committee in failing to perform a program search or updated evaluations. Plaintiffs disagree with the IHO's and SRO finding that the CSE relied on

sufficient current evaluative data in developing K.P.'s 2012-13 IEP (IHO 62). The CSE relied on outdated reports in developing the IEP.[7] Mr. Valesey testified that, as of the August 2012 CSE meeting, it had relied on Danbury School District's evaluations in determining GFMS was appropriate (T: 358). However, upon learning Plaintiff was unilaterally placing K.P. at Franklin, the CSE requested testing (T: 1277).[8] If the CSE felt it had sufficient data to develop the IEP, it would not have requested evaluations upon learning of Plaintiff's placement.

Plaintiffs were not given a chance to see the proposed George Fischer Middle School ("GFMS") class in session. The record does not support the IHO's finding that "the parent visited the special class in July 2012" (IHO 58). *See* PSUF ¶ 110-11. Plaintiffs' classroom visit to the GFMS class in June, 2012 also did not constitute parent participation, as the class was not in session during the visit. *See* PSUF ¶ 101- 107. Ms. Altman's testimony about this visit is false and should be disregarded. Plaintiffs disagree with the IHO's decision to credit the testimony of Ms. Altman (IHO 60). The fact that MS. Altman's testimony is contradicted by that of both M.P. and Mr. Valesey, Altman's supervisor, points to the conclusion that the IHO erred in crediting Altman's testimony. Further, the IHO provides absolutely no support or reasoning for why she decided to credit Altman's testimony over that of M.P. and Valesey. Additionally, CCSD failed to take M.P.'s and Dr. Rissenberg's input and report into consideration in creating the 2012-13 IEP (D-36, p. 4; T: 1682, 1582-83; PSUF ¶49-51). At the May, 2012 CSE, Dr. Rissenberg explained K.P.'s educational and social needs and emotional dysregulation (D-8; T: 1233, 1697), but this information was ignored (D-10 ; T: 1245). Further, M.P.'s concerns about the May 10,

---

[7]The only current report the CSE had, Dr. Rissenberg's report (D-36), was not taken into account in developing the IEP (D-10 ; T: 1245).

[8]At this point it was too late to evaluate K.P. and find an appropriate program prior to the start of the 2012-13 school year. K.P. was not evaluated by CCSD until the late Fall (T: 1291) and these evaluations were not reviewed by the CSE until February 2013 (T: 1298; D-11).

2012 and June 6, 2012 IEP's were ignored (PSUF ¶ 63-65, ¶ 70-73; P-P; D-8, D-9, D-10). The

NVLD document M.P. distributed at the May 10, 2012 CSE meeting is not mentioned in K.P.'s

IEP's (D-8, D-9, D-10; PSUF ¶ 66-68). M.P. did not receive the final IEP (D-10) until

September when CCSD classes had begun (T: 1274-75; PSUF ¶ 69). CCSD did not "have an IEP

'in effect' at the beginning of the school year," *S.F. and Y.D. v. New York City Dept. Of Educ.*,

2011 U.S. Dist. LEXIS 129672, 11 (S.D.N.Y. Nov. 9, 2011).[9] The CSE failed to address

emotional dysregulation or provide documentation on the GFMS program (PSUF ¶ 127, 131).

Finally, CCSD committed a serious procedural violation by failing to perform a FBA or

put a BIP in the IEP (D-10). Under the IDEA, in developing an IEP for "'a child whose behavior

impedes the child's learning,' the school district must 'consider the use of positive behavioral

interventions and supports, and other strategies, to address that behavior.'" *A.C. ex rel. M.C. v.*

*Bd. of Educ.*, 553 F.3d 165, 172 (2d Cir. 2009), citing 20 U.S.C. § 1414(d)(3)(B)(i). The failure

to conduct a FBA is a "serious procedural violation." It rises to the level of a denial of FAPE if

the IEP does not "adequately identif[y] the problem behavior and prescribe[] ways to manage

it."*F.L.* at 8-9, citing *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012); 8

NYCRR §200.22(b)(2); 8 NYCRR § 200.4(b)(v). Here, the CSE ignored M.P.'s concerns about

K.P.'s need for an FBA and BIP expressed at the August, 2012 CSE meeting (PSUF ¶ 77-82; T:

1280-81). Dr. Gorlitsky's testimony that a behavioral consultant would be available, not

documented in the IEP or anywhere else (D-10, T: 647), is retrospective testimony that cannot be

considered in determining whether the IEP was appropriate. *R.E.* at 173.[10] The IEP must be

_____

[9]See 8 NYCR 200.4(e)(ii).

[10] The Court in *R.E.* held "courts must evaluate the adequacy of an IEP prospectively as of the time of the parents' placement decision and may not consider 'retrospective' testimony regarding services not listed in the IEP". *R.E.* at 173.

considered as it is written and retrospective testimony about information that was not available to

the parent at the time the placement decision was made cannot be considered by the SRO. *Id.*

The CSE minutes recommend a FBA and BIP (D-10, p 2) but this is contradicted in the IEP (D-

10, p 4). M.P. discussed K.P.'s need for a BIP at the August, 2012 CSE, but one was not included

in the IEP (D-10, p 4 of 11; T: 1280-1281). In fact, on page 4 of the August 2012 IEP, in the

section entitled "Student Needs Relating to Special Factors," the "No" boxes are checked for both

of the following two questions: (1) "Does the student need strategies, including positive behavior

interventions, supports and other strategies to address behaviors that impede the student's

learning or that of others?"; and (2) "Does the student need a behavioral intervention plan?" (D-

10, p 4). Plaintiffs requested a FBA from CCSD in Fall, 2012, but were denied (T: 1281; P-C).

CCSD never visited Franklin to conduct a FBA and a CSE was not held to discuss adding one

(T: 1281-1282). At a CSE in February, 2013, the CSE did not recommend a BIP (D-11, p; T:

1301-02). Plaintiffs disagree with the IHO's finding that she "need not address the allegation

regarding failure to conduct a FBA and BIP" because an "FBA could not take place without

[K.P.] being present in the district" (IHO 64). Dr. Gorlitsky's testimony (T: 719) and Mr.

Valesey's letter (P-C) provide no explanation as to why CCSD could not conduct an FBA.

### ii. The 2012-13 IEP Was Not Reasonably Calculated to Confer Educational Benefit on K.P.

The Supreme Court requires "that the education to which access is provided be sufficient

to confer some educational benefit upon the handicapped child...We therefore conclude that the

'basic floor of opportunity' provided by the Act consists of access to specialized instruction and

related services which are individually designed to provide educational benefit to the

handicapped child." *Rowley*, at 200-201. A valid IEP should provide that "the door of public

education" is "opened for a disabled child in a 'meaningful' way." *Walczak v. Florida Union*

*Free School District*, 142 F. 3d 119, 130 (2nd Cir. 1999) (quoting *Rowley* at 192). "[A] school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." *A.D.* at *34. To determine whether a student is likely to progress, courts "examine the record for any 'objective evidence' indicating whether the child is likely to make progress or regress under the proposed plan." *Walczak* at 130 (citation omitted). Here, Plaintiffs disagree with the SRO's and IHO's finding that the 2012-13 IEP was reasonably calculated to confer education benefit on K.P. (SRO 14; IHO 61; D-8, D-9, D-10, D-11), as CCSD failed to consider Dr. Rissenberg's report in developing the 2012-13 IEP (PSUF ¶ 138) and did not take K.P.'s emotional dysregulation into account (PSUF ¶ 127-131, 139). In *Arlington Central School District v. D.K. and K.K. obo C.K.*, 2002 U.S. Dist. LEXIS 21849, *27 (S.D.N.Y. 2002), the District Court found that the proposed IEP was not reasonably calculated to confer educational benefit on C.K., noting that the expert reports presented by the parents indicated that the IEP was not sufficiently tailored to C.K.'s needs to enable him to progress. Here, K.P. was evaluated by Dr. Rissenberg (T: 1230), a Neuropsychologist with a private practice specializing in adult and pediatric clinical neuropsychology (T: 1558; PSUF ¶ 132-133).[11] Despite the information from Dr. Rissenberg's report and input at the May 2012 CSE (PSUF ¶ 134-138), CCSD failed to place K.P. in a program that provides emotional and social

---

[11] Based on Dr. Rissenberg's professional background (PSUF ¶ 132-133), her opinions must be afforded deference and her neuropsychological report (D-36) must be taken into account as an expert report in determining whether the proposed IEP was reasonably calculated to confer educational benefit on K. *Arlington* at *27. Further, based on her career as an education (P-Z; PSUF ¶ 133), she must be accorded deference as a professional educator. *M.M. v. Sch. Dist.*, 303 f.3d 523, 533 (4th Circ. 2002) (" administrative officers . . . must give appropriate deference to the decisions of professional educators"); *County School Board of Henrico County, Virginia v. Z.P.*, 399 F.3d 298, 307 (4th Cir. 2004) ([A]t all levels of an IDEA proceeding, the opinions of the professional educators are entitled to respect").

support. Without addressing or understanding K.P.'s medical diagnosis of emotional dysregulation, the 2012-13 IEP could not be reasonably calculated to confer educational benefit.

The Court in *R.E.* held "courts must evaluate the adequacy of an IEP prospectively as of the time of the parents' placement decision and may not consider 'retrospective' testimony regarding services not listed in the IEP". *R.E.* at 173.[12] Here, the Court must evaluate the 2012-13 IEP as of the time of M.P.'s placement decision. Since M.P. was unable to make her decision based on the August 30, 2012 IEP (D-10) because it was not received until after the start of the school year, the SRO should have considered that M.P. was forced to make a decision based off what was in the May and June IEP's (D-8, D-9). The SRO determined that the operative IEP is the August 2012 IEP (SRO 4). However, the SRO ignores the fact that the August 30, 2012 IEP (D-10) was not available until after the start of the 2012-13 school year and, thus, was not available at the time of the parent's placement decision. At the time that M.P. was forced to make a decision to unilaterally place K.P. at Franklin, she had not yet received the final IEP's (D-10, D-11) and had no choice but to place him at Franklin. At that time, the only IEP's she had seen (D-8, D-9) were inappropriate for K.P.[13] The SRO completely missed the significance of the fact that M.P. did not receive the "operative IEP" (SRO 4) until after the start of the 2012-13 school year and therefore could not possibly rely on that IEP in making her placement decision.

Further, the SRO should not have considered the retrospective testimony of the District. Dr. Gorlitsky's testimony (T: 671-74, 684-86) is retrospective in that it was not discussed at the

---

[12] In *M.O. ex rel. New York City Dep't of Educ.*, Docket No. 14-1473-cv, (2d Circuit, July 2015), the Court held that the SRO made "an erroneous determination that *R.E.* requires a child physically to attend a proposed placement school before challenging the school's ability to implement the child's IEP." id. at 16.

[13] Although the August, 2012 IEP (D-10) removed ICT classes that appeared on the May (D-8) and June (D-9) IEP's, the August IEP was still inappropriate, as it still offered no support for K.P.'s emotional dysregulation.

CSE or listed on the IEP (D-10).[14] Thus, her testimony must be disregarded and the IEP must be evaluated as of the time M.P. made her placement decision (T: 1277). *Id.*[15] In evaluating the IEP at the time of Plaintiffs' placement decision, CCSD suggested a program that utilized Integrated Co-teach ("ICT") classes (D-8, D-9), which was not appropriate for K.P. (T: 1595). The IHO found that the ICT class recommended on the June 6, 2012 IEP was not the final recommendation (IHO 59). However, this fails to take into account that the May, 2012 (D-8) and June, 2012 (D-9) IEP's recommended ICT classes for K.P.'s academics and the final IEP (D-10) was not issued until after the start of the 2012-13 school year (T: 1274-75)[16]. At that point, M.P. had already been forced to place K.P. at Franklin, as no appropriate program had been offered. Dr. Gorlitsky's testimony (T: 671-74, 684-86) is retrospective in that it was not discussed at the CSE or listed on the IEP (D-10; PSUF ¶ 118-120). Thus, her testimony must be disregarded and the IEP must be evaluated as of the time M.P. made her placement decision (T: 1277). *Id.*[17] Further, this was a pilot program (D-108; T: 486, 729; P-M, p. 2; PSUF ¶ 93-94), further proving the program was not individualized to address K.P.'s unique needs. The IHO found that "the student to staff ratio [of the GFMS class] was 8:1+2 and not 12:1+2, the maximum class size" (IHO 60). The IHO erred in crediting Altman's testimony concerning the actual size of the 2012-13 GFMS class and giving any weight to this retrospective testimony in making her decision. The IEP stated the size of the GFMS class is 12:1+2 (D-8, D-9, D-10). The IHO cannot analyze

---

[14] Shockingly, although the IHO and SRO inappropriately considered retrospective testimony of the District in deciding the 2012-13 IEP was appropriate, the SRO determined that the parent could not make retrospective testimony as to how the 2012-13 IEP would not have been appropriate or appropriately applied (SRO 7, 20).

[15] The IHO erred in failing to address this case law asserted in PPHB page 12 and providing no analysis whatsoever of the legal argument regarding retrospective testimony.

[16] This is a violation of 8 NYCR 200.4(e)(ii). See *S.F. and Y.D.* at 11.

[17] The IHO erred in failing to address this case law asserted in PPHB page 12 and providing no analysis whatsoever of the legal argument regarding retrospective testimony.

the actual class size in determining appropriateness, as this is a retroactive analysis[18] *Id.*

The SRO found that the Plaintiffs' claim regarding the inappropriateness of the GFMS placement was "speculative and not supported by the evidence in the hearing record." (SRO 20). Plaintiffs disagree with this analysis. First, the Court in *M.O.* held that a child need not physically attend a proposed placement prior to challenging the school's inability to implement the IE. *Id.* at 16. Further, Plaintiffs' argument that the GFMS placement for the 2012-13 school year was inappropriate for K.P. is not speculative but, rather, is based on Dr. Rissenberg's findings concerning K.P.'s emotional dysregulation and his educational, social, and emotional needs, as well as the failure of CCSD to definitively inform M.P. of exactly what program it was proposing. Plaintiffs do not solely rely on the argument that the District would have failed to properly implement the IEP as the SRO suggested, but rather, Plaintiffs argue that the 2012-13 IEP, including the placement, is inappropriate for K.P.[19] Plaintiffs argue that the 2012-13 IEP was inappropriate as written, and Plaintiff made the decision to place K.P. in a private placement prior to the start of the 2012-13 school year in order to ensure he received an appropriate education. Rather than waiting for K.P. to fail at CCSD and waiting for an IEP that was not ready at the beginning of the school year,[20] Plaintiff's decision to unilaterally place him in an appropriate placement where he would be able to make academic progress was not speculative in that it was not solely done in anticipation that the District would fail to implement that IEP, but

---

[18]The IHO miscategorizes Altman's testimony about the class size. Altman stated "[i]t was supposed to be a 12:1:2 but most of it was eight kids in the class" (T: 950). This statement is vague and does not speak to the specific class K.P. would have been in. The IHO even later states in her decision, "I find the Agust 30, 2012 IEP provided for staffing ratio of 12:1+2" (IHO 61), wherein she contradicts her earlier statement about the 8:1+2 class size.

[19]Plaintiffs also disagree with the SRO's similar finding regarding Plaintiffs' claim regarding the inappropriateness of the 2013-14 school year placement at the high school (SRO 20).

[20] Arguably, the final 2012-13 IEP was not even ready until February of 2013 when updated evaluations were finally completed and the final CSE meeting for K.P.'s 2012-13 IEP was finally held.

was also based on the fact that the IEP itself was inappropriate to provide K.P. with FAPE.[21]

### iii. CCSD Committed Procedural Violations in the 2013-14 School Year

Again, like the 2012-2013 school year, the CSE impeded M.P.'s opportunity to participate in the decision-making process and failed to consider K.P.'s progress at Franklin, depriving K.P. of educational benefit under the IEP and amounting to a denial of FAPE.[22] CCSD observed K.P. at Franklin in preparation for the 2013-14 annual review meeting, but failed to evaluate K.P.'s progress and profile changes (PSUF ¶ 141-148). Plaintiffs disagree with the IHO crediting Dr. Gorlitsky's testimony about the observation, as she did not take notes and did not render a report (T: 699). The Bridge Program was recommended for 2013-14 (T: 1307-11; PSUF ¶ 149-157). M.P.'s concerns regarding de-escalation strategies were ignored (PSUF ¶ 151-152; T: 1307-11). M.P.'s concerns about moving K.P. from a small environment into a large school and putting him into an ICT class were also ignored (T: 1314-15; PSUF ¶ 152) and her questions regarding how the Bridge Program would address K.P.'s NVLD and emotional dysregulation went unanswered (T: 403-04; PSUF ¶ 153). M.P. received no class profile or written materials about the program and had never heard of it prior to the CSE meeting (T: 905, 1312). M.P.'s input was ignored and the CSE deprived K.P. of educational benefit.[23]

### iv. The 2013-14 IEP Was Not Reasonably Calculated to Confer Educational Benefit on K.P.

Plaintiffs disagree with the SRO's and IHO's finding that the 2013-14 IEP (D-12) was reasonably calculated to confer educational benefit on K.P. (SRO 19; IHO 66). The CSE did not address M.P.'s concerns that this would not improve K.P.'s executive functioning deficits and

---

[21]Plaintiffs also disagree with the SRO's similar finding regarding the 2013-14 school year (SRO 21).

[22]See 20 U.S.C. § 1415(f)(3)(E)(ii); 20 USC § 1415(b)(1).

[23]See 20 U.S.C. § 1415(f)(3)(E)(ii); 20 USC § 1415(b)(1).

grow his homework independence (T: 1321-22; PSUF ¶ 164-165). ICT math is inappropriate for K.P. in the large high school environment (T: 1595; PSUF ¶ 166). M.P. disagrees with the IHO's finding that the Bridge Program was not too large (IHO 68; D-12; T: 1314-16; PSUF ¶ 159-161). In *E.S.,* 439-40, the Court held that the IEP was inappropriate because the CSE failed to adjust it from the previous year to reflect data on the student's progress at the private placement, stating, "[t]o implement an IEP in light of evidence that B.S. progressed at Maplebrook would be inherently regressive...recycling an old IEP is not legally sufficient because it is not individualized or appropriate for B.S. for the specific school year to which it pertains." *Id.* at 442. Here, KP. clearly progressed at Franklin in 2012-13, as testified to by Dr. Gorlitsky, M.P., and Dr. Rissenberg. (T: 719, 746-47, 1324-25, 1616-21, 2327-28). However, the 2013-14 IEP does not account for this progress in that the IEP did not significantly change (D-10, D-12). Like in *E.S.,* some goals remained the same, including using coping skills to maintain appropriate school behavior when expressing a negative emotion at school (D-10, pg 8, D-12, p 9) and learning 3 new learning strategies (D-10, p 7, D-12, p 9). *Id.* at 430. Further, the CSE recommended a 12:1:2 placement with ICT math even though the data showed K.P. was making meaningful progress in the small setting at Franklin (D-10, D-12). Rather than recognizing that Franklin was meeting K.P.'s educational needs in creating the 2013-14 IEP, the CSE recommended the same placement as the previous year. M.P. ascertained that the GFMS program funneled its students into the Bridge Program (T: 1313-14), indicating that the CSE did not consider K.P.'s unique needs and progress at Franklin. The CSE failed to adjust K.P.'s 2013-14 IEP (D-12) to reflect progress, making it "inherently regressive." *Id.* at 440.

**B.     PRONG II – FRANKLIN WAS THE APPROPROPRIATE PROGRAM FOR K.P. DURING THE 2012-13 AND 2013-14 SCHOOL YEARS**

The IHO erred in determining Franklin was not appropriate (IHO 70). Further, the SRO did not rule on Prong 2 and should not be given deference for Prong 2 (SRO 22). Under the totality of the circumstances, Franklin was the appropriate placement for K.P. during the 2012-13 and 2013-14 school years. Parents seeking reimbursement bear the burden of showing their private placement was appropriate. *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 104 (2nd Cir. 2000). The parents must show that, under the totality of the circumstances, the private placement is appropriate. *Gagliardo* 489 F. 3d at 112; *Frank G.* 459 F.3d at 364-65. In doing so, parents are not barred from reimbursement where a private school does not meet the IDEA definition of FAPE. See 20 U.S.C. §1401(9). An appropriate private placement need not meet state education standards or requirements. For example, a private placement need not provide an IEP for the disabled student. *Florence County School District Four v. Carter*, 510 U.S. 7 (1993).

### i. Franklin Was Reasonably Calculated to Confer Educational Benefit

Franklin conferred educational benefit on K.P. in the 2012-13 and 2013-14 school years. A private placement is "reasonably calculated to enable the child to receive educational benefits," *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2nd Cir. 2007); *Frank G. v. Board of Educ. Of Hyde Park*, 459 F. 3d 356, 364 (2006), if it is "likely to produce progress, not regression." *Walczak* 130. Here, the record is replete with evidence that K.P. made academic and social progress at Franklin and the record lacks evidence that K.P. regressed at Franklin in the 2012-13 and 2013-14 school years. The IHO found Plaintiffs presented no evidence to establish how Franklin met K.P.'s unique academic, social, and emotional needs (IHO 70), but provides no reasoning to support this finding and ignores substantial testimony by Franklin staff.[24] Plaintiffs

---

[24]The IHO erred in failing to afford deference to Franklin staff, especially in light of the fact that CCSD provided no testimony to rebut the Franklin testimony and Ms. Wenz and Ms. Bazemore are professional educators (P-BB, P-EE).. *M.M. at* 533; *Henrico County* at 307.

disagree with the IHO's finding that the interventions of the 504 plans were for all students at Franklin (IHO 70; D-117; P-CC; T: 1854, 1968, 2194-96; PSUF ¶ 187, 222-223). Plaintiffs disagree with the IHO's finding of limited progress in K.P.'s social and emotional problems (IHO 70), as M.P., Ms. Bazemore, Dr. Gorlitsky, and Dr. Rissenberg all testified that K.P. made progress at Franklin (PSUF ¶ 213-215, 224, 226 – 234, 236.[25]

### ii. Franklin Satisfies the LRE Provisions of IDEA

While students with disabilities should be educated in the least restrictive environment ("LRE") according to 20 U.S.C. § 1412(a)(5), parents are not held to the same strict standard of placement as are school districts. *W.S. and L.S. on behalf of C.S. v. Rye City School District*, 454 F. Supp. 2d 134, 139 (S.D.N.Y. 2006), citing *M.S.* at 96. Although a court may consider the LRE issue, a parent's inability to place his child in the LRE does not bar parental reimbursement. *Id.* The consideration of whether the disabled child is being educated in the LRE is not to be done in a vacuum; it is necessary to consider the LRE consistent with the child's unique needs. *Walczak* at 122; *Mrs. B. V. Milford Bd. Of Educ.*, 103 F. 3d 1114, 1122 (2nd Cir. 1997). Although the law expresses an interest for children with disabilities to be educated with non-disabled peers, if the "nature or severity" of a child's disability is such "that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily" a child can be segregated. "In such cases, instruction may be provided not only in special classrooms but also "in the home, in hospitals and institutions, and in other settings." 20 U.S.C. § 1401(a)(16). School boards may need to place a child in a residential setting if necessary to provide an appropriate education.[26]

---

[25] Dr. Gorlitzky and Mr. Murphy, the only two District witnesses who observed K.P. at Franklin, did not testify that Franklin was inappropriate for K.P. and Dr. Gorlitsky even testified that K.P. was making progress at Franklin (T: 719-20).

[26]See 34 C.F.R. § 300.302; *Mrs. B.* at 1122; *Walczak* at 122. Walczak does not require enrollment in a prior special education day program in order to determine that a residential program is the appropriate placement, only evidence that a child cannot receive educational benefit from a day program. Id. at 131.

Here, a residential placement was necessary for K.P. to receive educational benefit. Franklin is the LRE because a residential placement is necessary for K.P. to receive a FAPE. It is appropriate for K.P. to have no exposure to regular education students because his disabilities cause difficulties that require attention in his core instructional classes. Without such attention, K.P.'s education and social skills suffered tremendously prior to attending Franklin (D-14-17, D-23, D-36; T: 261, 284-85, 1198-99, 1200, 1210-12, 1214-15, 1222, 1226-27). K.P.'s need for a residential placement is evidenced in Dr. Rissenberg's report and testimony, M.P.'s testimony, and K.P.'s history of academic failure (PSUF ¶ 188-193; PPHB 2-19, 26-28; P-Y, p. 10).

### C.    PRONG III – THE EQUITIES FAVOR PLAINTIFFS

The IHO erred in determining the equities do not favor Plaintiffs (IHO 71). Further, the SRO did not rule on Prong 3 and should not be given deference (SRO 22). The equitable consideration analysis is whether the parents cooperated with the school district. *Forest Grove School District v. T.A.*, 557 US 230, 246 (2009); *N.R. v. Dep't of Educ. of the City Sch. Dist. of N.Y.*, 2009 U.S. Dist. LEXIS 27273 (S.D.N.Y. Mar. 31, 2009); *E.S.* at 431. The United States Supreme Court in *Forest Grove* infers a give and take in the balancing of the equities. The equitable analysis is "premised on a history of cooperation and together encourage school districts and parents to continue to cooperate in developing and implementing an appropriate IEP before resorting to a unilateral private placement." *Forest Grove* at 241.[27] The record is replete with evidence that M.P. informed CCSD continuously of her disagreement with CCSD's program. Notice was accomplished here because of Plaintiff's cooperative and informative behavior. See *S.W., et al. v. NYC Dep't. of Educ.*, 646 F. Supp. 2d 346, 361, (S.D.N.Y. 2009).

---

[27] The "IDEA authorizes reimbursement for private special-education services when a public school fails to provide a FAPE and the private-school placement is appropriate, regardless of whether the child previously received special-education services through the public school." *Id.* at 230.

M.P. informed CCSD that she was placing K.P. at Franklin in July, 2012 (T: 2113), achieving

notice of intent to place at district expense. *R.B. et al v. NYC Dep't. of Educ.*, 713 F. Supp. 2d

235, 248 (S.D.N.Y. 2009). M.P. provided all reports and documentation, attended all but one

CSE meeting (T: 1326, 1337), communicated with administrators on a regular basis as reflected

throughout the record, provided consent for evaluations and observations (T: 1287, 1302-1303,

1304) and made K.P.'s neuropsychologist available to attend CSE meetings (T: 1232). The fact

that M.P. strongly advocated her position that CCSD provide K.P. with an appropriate education

does not mean she was uncooperative in her efforts to secure FAPE for K.P. *E.S.* at 445. In

balancing the equities, M.P. cooperated with CCSD, has met her burden of equitable

considerations, and has satisfied the reimbursement test. *Burlington* at 370.

## VI.    CONCLUSION

Plaintiffs respectfully request that the SRO decision be reversed in its entirety and a

finding that CCSD failed to offer  K.P. a FAPE for the 2012-13 and 2013-14 school years; that

Franklin is an appropriate placement for KP; that Petitioners are entitled to reimbursement for

tuition and board paid to Franklin on behalf of K.P. for the 2012-13 and 2013-14 school years;

and, as the prevailing party, leave to apply for an award of attorney's fees and costs, and such

other and further relief as the hearing officer finds just and proper.

Dated: August 25, 2015
Katonah, NY

Hope H. Harris (HH-2423)
LAW OFFICE OF PETER D. HOFFMAN, P.C.
Attorneys for Plaintiffs
200 Katonah Avenue
Katonah, NY 10536
Phone (914) 232-2242