**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————————

**M.P., individually and On Behalf of K.P., a**
**minor under the age of 18 years,**                    **CIVIL ACTION NO.  15 CIV 03432 (VLB)**


                           **Plaintiffs,**

        **-against-**

**CARMEL CENTRAL SCHOOL DISTRICT,**
                   **Defendant.**


———————————————————————


# DEFENDANT'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT


Respectfully submitted:

**SHAW, PERELSON, MAY & LAMBERT, LLP**
Attorneys for Defendant
(Mark C. Rushfield, Esq., of Counsel)
21 Van Wagner Road
Poughkeepsie, New York 12603
Tel. No. (845) 486-4200

On the Brief:
Mark C. Rushfield, Esq.

## TABLE OF CONTENTS

PAGE

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**PRELIMINARY STATEMENT AND PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**ARGUMENT**

      **POINT I**

                **THE PLAINTIFF PARENT LACKS STANDING TO BRING THIS ACTION FOR TUITION REIMBURSEMENT AND THE ACTION SHOULD CONSEQUENTLY BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      **POINT II**

                **THE STANDARD OF REVIEW TO BE APPLIED BY THE COURT REQUIRES DEFERENCE TO THE DETERMINATIONS OF THE STATE REVIEW OFFICER AND IMPARTIAL HEARING OFFICER AND TO THE CONCLUSIONS OF DISTRICT EXPERTS AS CONCERNS THE NEEDS OF K.P. AND THE METHODOLOGIES TO BE APPLIED IN MEETING THOSE NEEDS AND WARRANTS AFFIRMANCE OF THE ADMINISTRATIVE DECISIONS CHALLENGED BY THE PARENT** . . . . . . . . . . . . . . . 7

      **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

i

## TABLE OF AUTHORITIES

**PAGE**

### CASES

*A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*,
553 F.3d 165 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*A.H. v. New York City Dep't of Educ.*,
652 F. Supp. 2d 297 (E.D.N.Y. 2009),
*aff'd in part, rev'd in part on other grounds and remanded sub nom.*
*A.H. ex rel. J.H. v. Dep't of Educ. of City of New York*,
394 F. App'x 718 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*,
458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) . . . . . . . . . . . . . . . . . . . . 9, 19, 20

*C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*,
746 F.3d 68 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*C.L. v. Scarsdale Union Free Sch. Dist.*,
744 F.3d 826 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*C.U. v. New York City Dep't of Educ.*,
23 F. Supp. 3d 210 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Carmel Cent. Sch. Dist. v. V.P. ex rel. G.P.*,
373 F. Supp. 2d 402 (S.D.N.Y. 2005)
*aff'd sub nom*. 192 F. App'x 62 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Cave v. E. Meadow Union Free Sch. Dist.*,
514 F.3d 240 (2d Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cerra v. Pawling Cent. Sch. Dist.*,
427 F.3d 186 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 19

*Davis v. Wappingers Cent. Sch. Dist.*,
431 Fed. App'x. 12 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*E.M. v. N.Y.C. Dept. of Educ.*,
758 F.3d 442 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Emery v. Roanoke City School District*,

431 F.3d 294 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*F.L. ex rel. F.L. v. New York City Dep't of Educ.*,
    553 F. App'x 2 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*FB v. New York City Dep't of Educ.*,
    14 CIV. 3902 (PAE), 2015 WL 5564446 (S.D.N.Y. Sept. 21, 2015) . . . . . . . . . . . . . . 11

*Florence County Sch. Dist. Four v. Carter ex rel. Carter,*
    510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Frank G. v. Board of Educ.*,
    459 F.3d 356 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21, 22

*Gagliardo v. Arlington Cent. Sch. Dist.*,
    489 F.3d 105 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 22

*Green v. N.Y. City Dep't of Educ.*,
    07 Civ 1257 (PKC), 2008 WL 919609 (S.D.N.Y. Mar. 31, 2008) . . . . . . . . . . . . . . . . 22

*Grim v. Rhinebeck Cent. Sch. Dist.*,
    346 F.3d 377 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 15, 19, 20

*H.B. v. Byram Hills Cent. Sch. Dist.*,
    14 CV 6796 (VB), 2015 WL 5460023 (S.D.N.Y. July 20, 2015) . . . . . . . . . . . . . . . . 3, 4

*Hardison v. Board of Education of Oneonta CSD*,
    773 F.3d 372 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Heather S. v. State of Wisconsin,*
    125 F.3d 1045 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hull v. Burwell,*
    14-CV-00801 (JAM), 2014 WL 6911357 (D. Conn. Dec. 8, 2014) . . . . . . . . . . . . . . . . 5

*J.G. v. Briarcliff Manor Union Free Sch. Dist.*,
    682 F. Supp.2d 387 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*J.G. ex rel. N.G. v. Kiryas Joel Union Free Sch. Dist.*,
    777 F. Supp. 2d 606 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*J.W. v. New York City Dep't of Educ.*,
    13 CV 6905 (JPO), 2015 WL 1399842 (S.D.N.Y. Mar. 27, 2015) . . . . . . . . . . . . . . . . 17

iii

*Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*,
    397 F.3d 77 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*M.C. v. Voluntown Bd. of Educ.*,
    226 F.3d 60 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19

*M.H. ex rel. A.H. v. Monroe-Woodbury Cent. Sch. Dist.*,
    250 Fed. App'x. 428 (2d Cir. Oct. 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*M.H. v. New York City Dep't of Educ.*,
    10 CIV. 1042 (RJH), 2011 WL 609880 (S.D.N.Y. Feb. 16, 2011) . . . . . . . . . . . . . 14, 18

*M.H. v. New York City Dept. of Educ.*,
    712 F. Supp. 2d 125 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*M.P.G. v. New York City Dept. Of Educ.*,
    08 CIV 8051 (TPG), 2010 WL 3398256 (S.D.N.Y. August 27, 2010) . . . . . . . . . . . . . . 8

*M.S. v. Bd. of Educ. of City Sch. Dist. of Yonkers*,
    231 F.3d 96 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16, 23

*Malone v. Nielson*,
    474 F.3d 934 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McCallion v. Mamaroneck Union Free Sch. Dist.*,
    10 CV 6207 (VB), 2013 WL 237846 (S.D.N.Y. Jan. 22, 2013) . . . . . . . . . . . . . . . 13, 18

*N.C. v. Bedford Cent. Sch. Dist.*,
    300 Fed. App'x. 11 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*N.K. v. New York City Dep't of Educ.*,
    961 F. Supp. 2d 577 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*P. ex rel. Mr. & Mrs. P. v. Newington Bd. of Ed.*,
    546 F.3d 111 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Piedmont Behavioral Health Ctr., LLC v. Stewart*,
    413 F. Supp. 2d 746 (S.D.W. Va. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*R.B. ex rel. A.B. v. Dep't of Educ. of City of New York*,
    10 Civ. 6684 (RJS), 2011 WL 4375694 (S.D.N.Y. Sept. 16, 2011) . . . . . . . . . . . . . . 10

*R.E. v. N.Y.C. Dept. of Educ.*,
    694 F.3d 167 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

*S.F. v. New York City Dept. of Educ.*,
    11 Civ. 870 (DLC), 2011 WL 5419847 (S.D.N.Y. Nov. 9, 2011) . . . . . . . . . . . . . . . . 18

*S.W. v. New York City Dept. of Educ.*,
    646 F.Supp. 2d 346 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Sch. Comm. of Burlington v. Dep't of Educ.*,
    471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stanek v. St. Charles Cmty Unit Sch. Dist. No. 303*,
    783 F.3d 634 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Susan B. Anthony List v. Driehaus*,
    U.S.   , 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
    752 F.3d 145, 160 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 20

*T.S. v. Bd. of Educ.*,
    10 F.3d 87 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*T.Y. v. N.Y.C. Dept. Of Educ.*,
    584 F.3d 412 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 24

*Thies v. N.Y. City Bd. of Educ.*,
    07 Civ 2000 (RMB), 2008 WL 344728 (S.D.N.Y. Feb. 4, 2008) . . . . . . . . . . . . . . 22, 24

*Viola v. Arlington Cent. Sch. Dist.*,
    414 F. Supp. 2d 366 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Walczak v. Florida UFSD*,
142 F.3d 119, 129 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

*Walker County Sch. Dist. v. Bennett*,
    203 F.3d 1293 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ward ex rel. A.W. v.Bd. of Educ. of Enlarged City School Dist of Middletown, N.Y.*,
    568 F.App'x 18 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Watson v. Kingston City Sch. Dist.*,
    325 F. Supp 2d 141 (N.D.N.Y. 2004),
    *aff'd sub nom.* 142 Fed. App'x. 9 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 18

*Weaver v. Millbrook CSD*,
  09 CV 692 (KMK), 2011 WL 3962512 (S.D.N.Y. September 6, 2011) . . . . . . . . . . 18, 22

*Werner v. Clarkstown Cent. Sch. Dist.*,
  363 F. Supp. 2d 656 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.,*
  550 U.S. 516, 127 S. Ct. 1994, 167 L. Ed. 2d 904 (2007) . . . . . . . . . . . . . . . . . . . . . . . 9

## STATUTES

20 U.S.C. §1412(a)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

20 U.S.C. §1415(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

20 U.S.C. § 1415(f)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

20 U.S.C. § 1415(f)(3)(B)(2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20 U.S.C. §1415(i)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

20 U.S.C. §1415(i)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

The plaintiff parent ("Parent") commenced the instant action individually and on behalf of her son, K.P. against the Carmel Central School District ("District") pursuant to the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. §1415(e)(2), challenging the February 4, 2015 decision of the New York State Review Officer ("SRO") in Decision No. 15-003 ("SRO Decision"), which held, in agreement with the November 22, 2014 Findings of Fact and Decision ("IHO Decision") of Impartial Hearing Officer ("IHO") Linda Agoston, Esq., that "the evidence in the hearing record demonstrates that the district sustained its burden to establish that it offered the student a FAPE [i.e., "free appropriate public education"] in the LRE [i.e., "least restrictive environment"] for the 2012-13 and 2013-14 school years." *SRO Decision at page 22.*

The Parent further challenges the decision of the IHO as to two areas of inquiry not addressed by the SRO because the SRO had determined that it was unnecessary to address those issues, i.e., "whether the student's unilateral placement at the Franklin Academy was an appropriate placement or whether equitable considerations supported the parents' requested relief." SRO Decision at page 22.

The parties have agreed, with the consent of the Court, to proceed directly to motion practice -- in the nature of a motion by the plaintiff to secure a reversal of the decisions of the IHO and SRO through the format of a summary judgment motion -- in lieu of requiring the District to answer the capacious Complaint. This memorandum of law is submitted by the District in opposition to the plaintiffs' motion and in support of a consequential Order of the Court dismissing the Complaint.

The District herein contends that the Parent lacks standing to bring this action and the Court is, thereby, deprived of subject matter jurisdiction over the instant action.

Should the Court nonetheless conclude that the Parent has standing, the District submits that the preponderance of the evidence in the administrative record supports the SRO's decision and, accordingly, the SRO's decision is entitled to full deference by the Court.

The District also contends that were the Court to nonetheless reject the SRO's conclusions that neither alleged procedural irregularities nor the special education programs developed by the District for the 2012-13 and 2013-14 school deprived K.P. of, or impeded K.P.'s right to, a FAPE, the Court should defer to the IHO's findings as concerned the inappropriateness of the Parent's unilateral placement of K.P. at the Franklin Academy, a residential boarding school exclusively for children with NVLD (non-verbal learning disorder) or Asperger's and social skills deficits and emotional regulation issues. (*Tr. 1816-17 and 1819*) and hold that the Parent has not met her burden of establishing that the program provided through the Franklin Academy for the 2012-13 or 2013-14 school years provided individualized instruction to meet K.P.'s unique special education needs and was the least restrictive environment for the student for either of those school years.

Finally, the District contends that should the Court find plaintiff has standing, reverse the decision of the SRO that the District provided K.P. with a FAPE through the IEPs it developed for K.P. for the 2012-13 and 2013-14 school years and further reject the determination of the IHO that the Franklin Academy was not an appropriate placement for K.P. for either the 2012-13 or 2013-14 school years, the Court should concur with the IHO's decision that a balancing of the equities did not favor the granting of tuition reimbursement to the Parent.

2

## STATEMENT OF THE FACTS

In the interest of brevity, as the record contains a detailed 21 page single spaced decision of the SRO, supported by references to the administrative record, and a detailed 71 page IHO Decision, supported by references to the administrative record, and the Parent and District have exchanged and filed with the Court comprehensive Rule 56.1 statements/counter-statements/responses, the Court is respectfully referred to the same and to the complete administrative record in order to determine the material facts established by that record[1].

## ARGUMENT

### POINT I

### THE PLAINTIFF PARENT LACKS STANDING TO BRING THIS ACTION FOR TUITION REIMBURSEMENT AND THE ACTION SHOULD CONSEQUENTLY BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

As the Supreme Court of the United States has made clear, Article III of the United States Constitution limits the jurisdiction of this Court to those in which a plaintiff has "standing" and that "[t]o establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*,    U.S.    , 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014); see also *H.B. v. Byram*

---

[1] The District notes, however, that many of the statements contained in the Parent's rule 56.1 Statement have been challenged by the District via its response thereto as unsupported by the administrative record cited or as inaccurate or misleading. The Court will need, therefore, both in its review of the parent's Rule 56.1 Statement and the citations to the record contained in the Parent's memorandum of law to the Court to engage in a comprehensive review of the full record in order to determine whether the factual allegations made in those submissions constitute an accurate and complete representation of the facts established during the administrative hearings.

*Hills Cent. Sch. Dist.*, 14 CV 6796 (VB), 2015 WL 5460023, at *5 (S.D.N.Y. July 20, 2015).

The Article III "injury in fact" requirement – "which helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy" (*Susan B. Anthony List*, 134 S. Ct. at 2341) – cannot be satisfied by an injury that is other than "'concrete and particularized' and 'actual or imminent', not 'conjectural' or 'hypothetical.'" *Susan B. Anthony List*, 134 S. Ct. at 2341.

The Parent, as the party invoking federal jurisdiction, "'bears the burden of establishing' standing" and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Id. at 2341.

In the instant case, the parent lacks the required "injury in fact" that will be "redressed" by a favorable decision because she admits, and submits in support of the Complaint (at Exhibit 3 to the Complaint), that all the tuition payments made for K.P. to attend the Franklin Academy for the 2012-13 and 2014-15 school years, which the Parent seeks to recover by way of reimbursement in this action, were made not by her or by K.P., but by the Plaintiff's mother, i.e., K.P.'s grandmother, who has since deceased. Plaintiff does not claim that such payments represented a loan.

As the Fourth Circuit Court of Appeals stated in *Emery v. Roanoke City School District*, 431 F.3d 294, 299-300 (4th Cir. 2005), in which the plaintiff parent's insurance company had paid the expenses which the plaintiff parent was seeking to recover under the IDEA, '[s]tanding doctrine requires that reimbursement should flow only to those who actually expend resources." The Court went on to hold:

> Plaintiff here challenges the failure of RCSB to provide reimbursement for the Cumberland expenses. But he has failed to prove he satisfies the constitutional requirement that he suffer an injury in fact with regard to this subsidiary injury. Crucially for the purposes of standing, he suffered no out-of-pocket loss himself for

4

> the services that Cumberland provided. He paid no money for the
> educational expenses incurred during the 1992–1993 school year.
> In fact, Mr. Emery's medical insurance provided by his employer
> paid the Cumberland expenses. Plaintiff has failed to show how
> awarding him this amount would be anything other than a windfall.

This principal concerning standing to assert an IDEA claim for reimbursement was effectively adopted by the Seventh Circuit Court of Appeals in *Malone v. Nielson*, 474 F.3d 934, 937 (7th Cir. 2007) and *Stanek v. St. Charles Cmty Unit Sch. Dist. No. 303*, 783 F.3d 634, 642 (7th Cir. 2015) and accepted by this Court in *S.W. v. New York City Dept. of Educ.*, 646 F.Supp. 2d 346 (S.D.N.Y. 2009), a case which the Parent mistakenly relies upon at Point II ("PLAINTIFF HAS STANDING") of her memorandum of law.

This Court recognized in *S.W.*, 646 F.Supp. 2d at 359, that in *Emery*, although the plaintiff had been injured in that the school district in that case had not provided him with an IEP, that "core injury" was not redressable for standing purposes because "[c]rucially for the purposes of standing, he suffered no out-of-pocket loss himself for the services" that had been provided; that "awarding 'reimbursement' to the plaintiff would not be paying for his education, but would be purely "a windfall.'" This Court, however, distinguished the case before it in *S.W.* from *Emery* because, in the case before this Court in *S.W.*, no one had yet paid for the tuition for which the plaintiff was seeking direct payment' i.e., unlike in the instant case, it remained an outstanding obligation of the plaintiff. *S.W.*, 646 F.Supp. 2d at 359. See also *Hull v. Burwell*, 14-CV-00801 (JAM), 2014 WL 6911357, at *3 (D. Conn. Dec. 8, 2014 ("A plaintiff has no constitutional injury-in-fact that would allow her to complain in federal court when her "injury" consists solely of a financial liability that has been paid for in full by a third party . . . .") and *Piedmont Behavioral Health Ctr., LLC v. Stewart*, 413 F. Supp. 2d 746, 755-56 (S.D.W. Va. 2006)

(holding that plaintiff parents had failed to establish that they had suffered a "cognizable injury in fact and thus lack standing to assert an IDEA claim" because the plaintiff parents had readily acknowledged that they had not paid for any of their son's educational expenses and had not alleged that their son's educational service provider had sought payment or that they expected to be held responsible for payment; that they implied that the opposite was true).

In support of her claim that, despite all the tuition for which she seeks reimbursement having been paid by K.P.'s grandparent, she has a redressable injury in fact for purposes of Article III standing, the Parent also mistakenly relies upon the decision of the Second Circuit Court of Appeals in *E.M. v. N.Y.C. Dept. of Educ.*, 758 F.3d 442 (2d Cir. 2014).

In *E.M.*, the Second Circuit was presented with such a standing issue in the context of addressing the question raised in *S.W.* as to whether a plaintiff parent has standing to seek a direct payment to be made to a private school where the parent has not made payment. The Court decided that in those circumstances, the plaintiff parent's "contractual obligation itself constitutes an 'injury in fact' for Article III purposes, one that is 'redressable' by the direct tuition payment she seeks" because the plaintiff parent had an obligation to pursue her statutory remedies in order to repay the tuition owed to the private school. *E.M.*, 758 F.3d at 456-57. However, contrary to the Parent's portrayal of its decision, the Court in *Emery* concluded that "we need not decide today the thorny question whether the denial of a *publicly* funded FAPE, standing alone, is an injury that is "redressable" by an order requiring the Department to pay the child's private-school tuition directly" because the plaintiff parent had incurred an unpaid financial obligation to the private school or at least risked potential civil liability should she fail to pay the owed tuition. 758 F.3d at 456-57.

The Second Circuit nonetheless confirmed in *E.M.*, 758 F.3d at 454, that "[i]f the parents of a special needs child who is enrolled in a private school have not paid tuition and are not legally obliged to do so, then their standing to pursue IDEA remedies may be called into question." Clearly then, since in this case there is no unpaid financial obligation of the Parent to the Franklin Academy, *E.M.* does not support the Parent's claim that the *Emery* line of decisions – holding that where the plaintiff's financial obligation has been paid by a third party, there can be no redressable injury in fact for purpose of standing -- are deemed unpersuasive by the Second Circuit Court of Appeals and do not require dismissal of the Complaint on Article III jurisdictional grounds.

## POINT II

**THE STANDARD OF REVIEW TO BE APPLIED BY THE COURT REQUIRES DEFERENCE TO THE DETERMINATIONS OF THE STATE REVIEW OFFICER AND IMPARTIAL HEARING OFFICER AND TO THE CONCLUSIONS OF DISTRICT EXPERTS AS CONCERNS THE NEEDS OF K.P. AND THE METHODOLOGIES TO BE APPLIED IN MEETING THOSE NEEDS AND WARRANTS AFFIRMANCE OF THE ADMINISTRATIVE DECISIONS CHALLENGED BY THE PARENT**

The IDEA provides that where, as here, a parent or student brings suit to challenge the administrative decisions of the IHO and/or SRO made as a consequence of the impartial hearing process, this Court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B); *J.G. v. Briarcliff Manor Union Free Sch. Dist.,* 682 F.Supp.2d 387, 392

7

(S.D.N.Y.2010).   Neither party in the instant matter is requesting that this Court accept additional evidence.

Although the parties and Court have agreed to address the issues before the Court through a plaintiff motion for summary judgment, "the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.,* 397 F.3d 77, 83 n. 3 (2d Cir.2005); *M.P.G . v. New York City Dept. of Educ.,* 08 CIV 8051(TPG), 2010 WL 3398256, at *7 (S.D.N.Y. August 27, 2010). See also *P. ex rel. Mr. & Mrs. P. v. Newington Bd. of Ed.*, 546 F.3d 111, 118 (2d Cir. 2008) ("[W]hile our review is de novo, it is tinged with a significant degree of deference to the state educational agency, as we are essentially acting in an administrative-law-style capacity.").

The starting point for this Court's review is the record and decisions below. See, e.g., *Walker County Sch. Dist. v. Bennett*, 203 F.3d 1293, 1298-99 (11th Cir. 2000). Though this Court's function under 20 U.S.C. §1415(i)(2) differs from the typical summary judgment review, a motion for summary judgment is an appropriate, and "pragmatic procedural mechanism for reviewing administrative decisions" under the IDEA. *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.,* 752 F.3d 145, 160 (2d Cir. 2014). An IDEA action, however, differs from an ordinary summary judgment motion because the existence of a disputed issue of material fact will not preclude a motion in the format of one for summary judgment in the IDEA context. *M.S. v. Bd. of Educ. of City Sch. Dist. of Yonkers*, 231 F.3d 96, 102 (2d Cir. 2000); *Viola v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, 377 (S.D.N.Y. 2006).

In performing its review of the administrative decisions below, the inquiry before the Court is normally two-fold.  The Court must determine: (1) whether the District complied with

8

the procedures set forth in the IDEA and (2) whether the IEPs at issue were reasonably calculated to enable K.P. to receive educational benefits. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-09, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

With regard to procedural issues, as the SRO noted in his decision at SRO Decision at page 10, procedural errors do not in and of themselves render an IEP legally inadequate under the IDEA. *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003).  Rather, such errors may only result in a finding that they deprived a student of a FAPE if they (1) "impeded the child's right to a free appropriate public education", (2) "significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parents' child" or (3) "caused a deprivation of educational benefits." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.,* 550 U.S. 516, 525-26, 127 S. Ct. 1994, 2001, 167 L. Ed. 2d 904 (2007); *T.M. ex rel. A.M.*, 752 F.2d at 160. Further, as the Second Circuit held in *R.E. v. N.Y.C. Dept. of Educ.*, 694 F.3d 167, 190-191 (2d Cir. 2012), even a serious error such as the failure to conduct a functional behavior assessment ("FBA") will not rise to the level of a denial of a FAPE where, as the IHO found was the case as concerns the August 30, 2012 IEP (*IHO Decision at page 65*), the IEP adequately addresses the student's behavioral issues.  See also *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.,* 553 F.3d 165, 172 (2d Cir. 2009). The IHO's decision on the merits of the FBA claim of the Parent in this regard (which was not addressed by the SRO on the basis that it was not an issue raised during the hearing [see *IHO Decision at page 64* and *SRO Decision at page 10 n. 15*]) is "precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." *T.M. ex rel. A.M.*, 752 F.2d at 169.

9

In any event, as concerns the procedural errors asserted by the Parent, apart from the Parent's claim that the Parent was denied adequate parental participation in the formulation of the August 30, 2012 IEP by virtue of not being informed about potential out-of-district programs or a program search for the 2012-13 school year and the "functional grouping" of K.P. vis-à-vis other students in the District's proposed special education class for the 2012-13 school year[2] (*SRO Decision at page 10 n. 15*), the Parent failed to assert procedural errors in her due process complaint. See *IHO Decision at page 64* and *SRO Decision at page 10 n.15*. As the Parent's due process complaint raised no such procedural irregularities concerning, for example, the formulation of goals or the conducting of an FBA at the Franklin Academy (as opposed to the District proposed program) during the 2012-13 school year, the Parent was foreclosed from proceeding with (and exhausting) such claims and the IHO and SRO properly found that such claims were outside the scope of their review. 20 U.S.C. § 1415(f)(3)(B)[3]; *R.B. ex rel. A.B. v. Dep't of Educ. of City of New York*, 10 Civ. 6684 (RJS), 2011 WL 4375694, at *6 (S.D.N.Y. Sept. 16, 2011); *M.H. v. New York City Dept. of Educ.*, 712 F. Supp. 2d 125, 159 (S.D.N.Y. 2010).

This conclusion is not altered as a consequence of the Second Circuit's decision in  *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77-78 (2d Cir. 2014), in which the Court held

---

[2] "Functional grouping", i.e., the classroom peer group for a student, itself involves "questions of methodology more appropriately answered by the state and district decision-makers." *Watson v. Kingston City Sch. Dist.*, 325 F. Supp 2d 141, 145 (N.D.N.Y. 2004), *aff'd sub nom.* 142 Fed. App'x. 9 (2d Cir. 2005).

[3] "The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7) of this section, unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B)(2005).

that the waiver rule under 20 U.S.C. § 1415(f)(3)(B) was not to be "mechanically applied." As the Court there made clear, arguments not directly raised in a due process complaint were not foreclosed where (1) the due process complaint provided fair notice to the school district of the argument at issue, (2) "both the IHO and SRO reached the issue on the merits," giving the federal court "a record for review" and (3) the argument goes to "the heart of this dispute." *C.F.,* 746 F.3d at 78; *FB v. New York City Dep't of Educ.,* 14 CIV. 3902 (PAE), 2015 WL 5564446, at *19 (S.D.N.Y. Sept. 21, 2015). Thus, contrary to the Parent's argument to this Court, simply using broad language (e.g., about denial of a FAPE) in a due process complaint as the Parent claims to have done in the instant case, does not preclude a waiver of procedural or other claims under 20 U.S.C. § 1415(f)(3)(B) where, as in the instant case, the above three requirements are not met. *FB*, 2015 WL 5564446, at *20; *C.U. v. New York City Dep't of Educ.*, 23 F. Supp. 3d 210, 223-24 (S.D.N.Y. 2014).

As the Parent did not exhaust her administrative remedies as to such procedural issue claims (and multiple other claims now being raised in the Parent's Rule 56.1 Statement, as addressed in the District's response to the Parent's Rule 56.1 Statement[4]), the Court lacks subject matter jurisdiction to consider such claims. *Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d

---

[4] In the parent's memorandum of law to this Court, for example, the Parent contends that the August 30, 2012 IEP was not the final IEP (as found by the IHO and SRO) for K.P.'s 2012-13 school year. However, as noted in the Response and Counter-Statement to Statement 61 in the Parent's Rule 56.1 statement, the SRO held, correctly, that that issue was raised for the first time in the appeal to the SRO and, consequently, was "outside the permissible scope of review and will not be considered" (*SRO Decision at page 10 n.15*); that the Court, consequently, lacks subject matter jurisdiction over this unexhausted claim.

240, 243 (2d Cir.2008); *N.K. v. New York City Dep't of Educ.*, 961 F. Supp. 2d 577, 584 (S.D.N.Y. 2013).

In any event, as these alleged procedural inadequacies did not substantially prejudice the Parent vis-a-vis her participation in the IEP formulation process or cause a deprivation of an educational benefit to K.P.,[5] even if such procedural violations were to be found to have occurred, that finding would not serve as a basis for reversing the SRO's decision. *Grim*, 346

---

[5] As concerned the "parental participation" procedural error raised by the parent through her due process complaint, the SRO held:

> [I]t appears that although the May and June 2012 CSEs continued to consider and discuss placement and program options for the student—including potential out-of-district programs—the CSE did not effectively communicate the status of any out-of-district program search, or whether the CSE agreed to or refused to conduct an out-of-district program search to the parents. Indeed, the prior written notices sent to the parents after each CSE meeting recited the same information with regard to "other options considered and the reasons why those options were rejected," namely, "[t]here were no other options considered at this time" (see Dist. Exs. 63; 66 at p. 1; 72 at p. 1). However, even assuming that the CSE's failure to effectively communicate with the parents or the CSE's failure to keep the parents adequately apprised of any out-of-district program search constituted procedural violations, the hearing record does not contain sufficient evidence upon which to conclude that such procedural inadequacies impeded the student's right to a FAPE, significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or caused a deprivation of educational benefits (20 U.S.C. § 1415[f][3][E][ii]; 34 CFR 300.513[a][2]; 8 NYCRR 200.5[j][4][ii]). Rather, the evidence in the hearing record indicates that the parents were afforded the opportunity to participate in the development of the August 2012 IEP and to express and present their concerns. . . . . Thus, contrary to the parents' arguments, the IHO properly determined that the parents had an opportunity to participate in the development of the August 2012 IEP, . . . *SRO Decision at page 14.*

As K.P. was never educated under a District IEP, as the Parent had already enrolled him at the Franklin Academy before the August 30, 2012 IEP was determined, and he spent the entire following two school years at the Franklin Academy, no such prejudice to the Parent or deprivation of educational benefit to K.P. is possible from such alleged procedural errors as concerns functional grouping or any of the Parent's unexhausted procedural claims. *N.C. v. Bedford Cent. Sch. Dist.*, 300 Fed. App'x. 11, 14 (2d Cir. 2008) ("Such errors will not negate the adequacy of an IEP where the child's education has not been affected and the parents have not been deprived of meaningful participation in the process.").

F.3d at 382[6]; *J.G. ex rel. N.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606, 638-39 (S.D.N.Y. 2011).

As concerns the SRO's decision as to the substantive adequacy of the 2012-13 and 2013-14 IEPs, the Second Circuit and this Court have stated that "because administrative agencies have special expertise in making judgments concerning student progress, deference [to the SRO] is particularly important when assessing an IEP's substantive adequacy." *Cerra*, 427 F.3d at 195; *McCallion v. Mamaroneck Union Free Sch. Dist.,* 10 CV 6207 (VB), 2013 WL 237846, at *9 (S.D.N.Y. Jan. 22, 2013). Further, any review of the IEPs is "necessarily prospective in nature" and the Court may "not engage in 'Monday-morning quarterbacking' influenced by" its knowledge of K.P.'s "subsequent progress" (limited as it was) at the Franklin Academy or any determinations as to the successor IEP for K.P.'s 2014-15 school year. *McCallion*, 2013 WL 237846, at *9.

Finally, the Court should reject claims as asserted by the Parent in her Rule 56.1 Statement that the District has impermissibly been allowed to retrospectively amend the IEP by submitting evidence concerning the physical layouts of the schools and programs that K.P. would have been attending which were capable of maintaining his separation from the larger school population, or the mechanisms that would be followed by his teachers and aides to

---

[6]As the Second Circuit there held:

> "The absence of prejudice is particularly clear in the context of the Grims' actions. Chelsea's parents removed her from the school district and placed her in Kildonan for the 1995-96 school year months before they challenged the IEP for that year. Chelsea remained at Kildonan for all the years at issue, and there is no suggestion in the record that the Grims would have altered their placement decision had their challenges to the IEPs been resolved in a more timely fashion."

insulate him from instances which might be affected by his "emotional dysregulation", or the actual numbers of students that were enrolled in the special education programs recommended for K.P. (which had a maximum number of 12 students, but could [and did] have less) or the methodologies that would have been used by the school psychologist to address K.P.'s needs during their IEP-specified consults,  or that a behavioral consultant would have been available as part of the FBA and BIP recommended in the August 30, 2012 IEP, etc., since the IEPs did not specify such things. The Second Circuit has not adopted the "four corners" rule which would prohibit the IHO, SRO and this Court from considering such facts that are not specified in the IEPs; instead holding that evidence explaining or justifying the services listed in an IEP is not prohibited from consideration; that what is prohibited from consideration is evidence to support a modification "materially different from the IEP." *R.E.*, 694 F.3d at 185; *see also F.L. ex rel. F.L. v. New York City Dep't of Educ.*, 553 F. App'x 2, 5-6 (2d Cir. 2014) and *M.H. v. New York City Dep't of Educ.*, 10 CIV. 1042 (RJH), 2011 WL 609880, at *11 (S.D.N.Y. Feb. 16, 2011) (holding that omission as to services otherwise discussed in an IEP [e.g., an FBA and BIP recommendation as referenced in the comments to K.P.'s August 30, 2012 IEP] was "harmless error" and did not constitute a denial of a FAPE as the recommendation, omitted from the IEP because of a clerical error, appeared in the CSE meeting minutes; that, to hold otherwise, would "exalt form over substance.").

Where, as here, there is a unilateral placement of a student in a private program, if the IEPs proposed by the District are found to be inappropriate by the Court despite the SRO's conclusions to the contrary, there is another inquiry for the Court to address: i.e., was the private placement of K.P. at the Franklin Academy appropriate to meet his unique needs. *Sch. Comm. of*

*Burlington v. Dep't of Educ.*, 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *Frank G. v. Board of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006).

A final inquiry – only to be made in the event that there is a judicial finding that the District's IEPs denied K.P. a FAPE and that the Parent's placement of K.P. in the Franklin Academy is deemed an appropriate placement -- is whether equitable considerations support the Parent's claim to tuition reimbursement. *Frank G*, 459 F.3d at 363-64.

The role of the Court in reviewing educational decisions under the IDEA "is circumscribed." *M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000) (*citing Muller v. Committee on Special Educ.*, 145 F.3d 95, 101 (2d Cir. 1998)); *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113 (2d Cir. 2007).  As the Court of Appeals has emphasized in this regard, judicial review of the SRO's decision is strictly limited. *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191-192 (2d Cir. 2005); *Grim*, 346 F.3d at 381.

In performing its review, this Court must be careful not to substitute its own notions of sound educational policy for those of the school authorities being reviewed.  *M.C. v. Voluntown Bd. of Edu.*, 226 F.3d at 66. This Court must give "due weight" to the administrative proceedings' determination of whether a challenged IEP will provide a child with an appropriate public education, and be "mindful that the judiciary lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *A.C. ex rel M.C.,* 553 F.3d at 171. While a district court should not simply "rubber stamp" decisions made in the administrative proceedings, it is required to give deference to those proceedings, particularly when, as in the instant case, the rulings below reflects a thorough and careful review of the record by the administrative officers. *Cerra*, 427 F.3d 186, 191-2 and 196 (noting that

15

"[a]s a preliminary matter, deference is particularly appropriate when, as here, the state hearing officers' review has been thorough and careful" and holding that a district court's determination that a student was unlikely to make progress under a proposed IEP "is precisely the kind of educational policy decision a district court may not make absent objective evidence in the record suggesting that the SRO has reached an erroneous conclusion."); *M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000); *Walczak v. Florida UFSD*, 142 F.3d 119, 129 (2d Cir. 1998).

In determining the instant motion, the Court is to review the administrative record below as well as the decision rendered by the SRO (and, if necessary, by the IHO) and determine whether their conclusions were correct based upon the preponderance of the evidence developed in that record. *Gagliardo*, 489 F. 3d 105; *M.S.*, 231 F.3d at 102. The Parent bears the ultimate burden of proof in establishing by a preponderance of the evidence that the SRO's (or, if necessary, IHO's) conclusions were incorrect. *M.H. ex rel. A.H. v. Monroe-Woodbury Cent. Sch. Dist.*, 250 Fed. App'x. 428 (2d Cir. Oct. 12, 2007).

The conclusions of the SRO (and IHO) are entitled to substantial deference by this Court, *M.S.*, 231 F.3d at 105. Deference to the SRO's (or IHO's) decision is particularly required as the Court's decision in this case will be based upon the same evidence as was before the SRO (and IHO). *M.H. ex rel. A.H.*, 250 Fed. App'x. at 429 ("A district court must grant particular deference to the administrative proceedings when, as in this case, its decision is based solely on the same evidence in the administrative record."). Further, to the extent that the IHO has addressed issues that the SRO has not deemed it necessary to reach (i.e., the appropriateness of the Parent's placement of K.P. at the Franklin Academy for the 2012-13 and 2013-14 school years and whether the equities warrant tuition reimbursement to the Parent), in the event the

16

Court should deem it necessary to address those issues, the IHO's decision on those issues is entitled to equal deference by the Court. *Gagliardo*, 489 F.3d at 113-114 (reversing district court decision that failed to lend deference to the IHO's finding and counseling deference to the IHO with respect to issues for which the SRO had not made explicit findings); *J.W. v. New York City Dep't of Educ.*, 13 CV 6905 (JPO), 2015 WL 1399842, at *6 (S.D.N.Y. Mar. 27, 2015).

In the instant case, the Parent's clearly primary (if not, actually, exclusive) disagreement with the District's IEPs for K.P. were on methodology issues. The Parent believed that, despite the Committee on Special Education's formulation of educational programs for each of the school years at issue designed to substantially limit K.P.'s unsupervised interactions with non-special education students in a class that would be geographically separated from the main student body, K.P. could not be educated in a public school environment, involving larger school populations than would be the case at a small private boarding school like the Franklin Academy because of his "emotional dysregulation" precluding him interacting with his peers. This claim, in the context of a professional non-parental perspective, was solely supported by the testimony of the parent's sole expert witness, a child psychologist, Dr. Rissenberg, who had no familiarity whatsoever with the actual public school programs and classes which had been proposed for K.P. through the final IEPs developed for his 8th and 9th grades. However, as part of the District's Committee on Special Education's review, while it must consider an evaluation report submitted by the Parent (provided the private evaluation meets the District's criteria), the District is not required to follow the recommendations in such a report. *T.S. v. Bd. of Educ.*, 10 F.3d 87, 89-90 (2d Cir. 1993).

Furthermore, contrary to the testimony of Dr. Rissenberg, the District's highly trained and experienced educators and school psychologist testified to the IEPs developed by the

17

Committee on Special Education ("CSE") for K.P. being designed to provide him the educational programs and support he needed in the least restrictive environment that would meet his "emotional dysregulation" needs. As the SRO's conclusions that the IEPs provided K.P. with a FAPE were in complete conformity with that of the District's trained educators – each of whom possessed advanced degrees in special education and/or related services and decades of experience – they are subject to substantial deference. *Heather S. v. State of Wisconsin*, 125 F.3d 1045, 1057 (7th Cir. 1997) ("A court is particularly incapable of making such judgments, which is why it must defer to trained educators . . . . We note that the deference is to trained educators . . . ."). In light of the plaintiffs' sole reliance upon the allegedly contrary opinion of their privately retained expert, the decision of the U.S. District Court for the Northern District of New York in, *Watson v. Kingston City Sch. Dist.*, 325 F. Supp 2d 141, 145 (N.D.N.Y. 2004), *aff'd sub nom.* 142 Fed. App'x. 9 (2d Cir. 2005) is particularly instructive: "The mere fact that a separately hired expert has recommended different programming does nothing to change this, as deference is paid to the District, not a third party." The Second Circuit Court of Appeals specifically affirmed this principal, *Watson*, 142 Fed. App'x at 10, stating: "That privately hired experts recommended different teaching methodologies for [the student] does not undermine the deference the Court must pay to the District." See also *T.Y. v. N.Y.C. Dept. of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009), *McCallion*, 2013 WL 237846, at *10, *S.F. v. New York City Dept. of Educ.*, 11 Civ. 870 (DLC), 2011 WL 5419847, at *15 (S.D.N.Y. Nov. 9, 2011), *Weaver v. Millbrook CSD*, 09 CV 692 (KMK), 2011 WL 3962512, at n.8 (S.D.N.Y. September 6, 2011)

and *M.H. v. New York City Dept. of Educ.*, 10 CIV. 1042 (RJH), 2011 WL 609880 (S.D.N.Y. Feb. 16, 2011).[7] This deference is further mandated where, as here, the substantive issue in dispute is the educational methods to be utilized by the District in addressing K.P.'s "emotional dysregulation" disability. *Rowley*, 458 U.S. at 207 ("[C]ourts must be careful to avoid imposing their view of preferable educational methods upon the States."); *Cerra,* 427 F.3d at 195; *Grim*, 346 F.3d at 383.

Furthermore, the issue in such a case as this as concerns whether the District's proposed programs provided K.P. with a FAPE is **not** whether the educational programs developed by the Franklin Academy were better or more effective, but rather, whether the District's programs were "reasonably calculated to enable the child to receive educational benefits," i.e., to permit the child to benefit from the instruction. *Rowley*, 458 U.S. at 188 and 200-02; *Grim*, 346 F.3d at 379 and 381[8]; *M.C.*, 226 F.3d at 62. The IEPs prepared for K.P. clearly met this standard and the SRO properly found (and fully expounded the reasons therefore in his decision) that they provided him with a FAPE. See *SRO Decision at pages 14-19*.

In addition, as the Second Circuit noted in *Grim*, the IDEA imposes upon school districts developing IEPs a strong preference for "mainstreaming," requiring that special education be

---

[7] These cases make clear that the fact that Dr. Rissenberg is, arguably, an educator by virtue of a position she holds with a college does not alter the deferential balance in favor of the District between her testimony as an expert witness for the Parent and that of the highly trained educators and professionals employed by the District.

[8] Holding that IEPs are "not required to 'furnish[] . . . every special service necessary to maximize each handicapped child's potential,' [citing *Rowley*]. Rather, the IDEA requires that IEPs provide a 'basic floor of opportunity,' consisting of services that are 'individually designed to provide educational benefit' to a child with a disability."

provided in the "least restrictive setting consistent with a child's needs." 346 F.3d at 379. See also *T.M. ex rel. A.M.,* 752 F.3d at 161.This preference is set forth in the statute itself. *20 U.S.C. §1412(a)(5)(A).*

In the instant case, although both IEPs called for a special education class for K.P. (with the exception of the regular education math class and certain special classes in the 9th grade IEP), with opportunities for K.P. to interact with non-disabled peers, the SRO properly considered and effectuated this mainstreaming requirement in holding, at page 22 of his decision, that the District's IEPs offered an appropriate education in the least restrictive environment consistent with K.P.'s needs (and consequently effectively rejecting the contention of the Parent that the only appropriate program for K.P. was a program in a segregated private boarding school for disabled students), *SRO Decision at page 22*, and great deference is owed to that decision. *Rowley*, 458 U.S. at 202; *Grim*, 346 F.3d at 383. Clearly, had the District simply agreed to the parent's demand to place K.P. in a segregated boarding school – a most restrictive environment – it would not be complying with its LRE obligation under the IDEA. *Walczak*, 142 F.3d at 132[9].

---

[9] Holding:

> While some children's disabilities may indeed be so acute as to require that they be educated in residential facilities, it is appropriate to proceed cautiously whenever considering such highly restrictive placements. IDEA's preference is for disabled children to be educated in the least restrictive environment capable of meeting their needs.  . . .  The norm in American public education is for children to be educated in day programs while they reside at home and receive the support of their families. A "[r]esidential placement is, by its nature, considerably more restrictive than local extended day programming." *Carlisle Area School v. Scott P.,* 62 F.3d 520, 534 (3d Cir.1995), *cert. denied,* 517 U.S. 1135, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996). Thus, "[e]ven in cases in which mainstreaming is not a feasible alternative," the statutory preference for a least restrictive placement applies. *Sherri A.D. v. Kirby,* 975 F.2d 193, 206 (5th Cir.1992).

Though the SRO found it unnecessary to address the issue of whether the Franklin Academy was an appropriate placement for K.P. for which tuition reimbursement could be ordered, in the event that the District had not provided K.P. with a FAPE for either of the years involved, the IHO specifically addressed that question and concluded that it was not, both in light of the extremely restrictive nature of the educational environment at the Franklin Academy and the fact that the Franklin Academy did not provide a program and services designed to meet K.P.'s unique needs. *IHO Decision at pages 69-70.* [10]

Apart from the deference that the IHO's decision on this subject is owed, *Hardison v. Board of Education of Oneonta CSD*, 773 F.3d 372, 386 (2d Cir. 2014),  the IHO's decision was, in any event, clearly correct. To qualify for reimbursement under the IDEA, the plaintiffs had the burden of showing that the Franklin Academy provides "educational instruction specially designed to meet the unique needs" of K.P. "supported by such services as are necessary to permit the child to benefit from instruction." *Frank G.*, 459 F.3d at 365. In *Davis v. Wappingers*

---

[10] "I find there was insufficient evidence to establish that because student X regressed at Wooster without special education supports and services that student X required a residential placement for the 2012-2013 and 2013-2014 school years. While parents are not held as strictly to the standard of placement in the least restrictive environment as school districts are, the appropriateness of the parental placement may be considered in determining whether the parents' placement is appropriate.(See *M.S. v. Bd. of Educ*., 231 F .3d 96 [2d Cir. 2000]).

I find that there was no evidence presented by the parents to establish how the FA met the unique academic, social and emotional needs of the student. The testimony of the FA staff did not establish that the student's program was tailored to the student's unique special education needs over the 2012-2013 and the 2013-2014 school years as required (*Gagliardo v. Arlington Cent. Sch. Dist*, 489 F 3d. 105, 115 [2dCir. 2007]).

Testimony established that the student continued to struggle with organization and the interventions of the 504 plans were to the (sic) all the students at the FA. Moreover, I find the record was replete with examples of limited progress in the social and emotional problems exhibited by student X. I find that testimony adduced at the hearing established that student X continued to struggle socially and emotionally despite the interventions at the FA (trans. 2488; 2656; 2787; 2814-2816; 2900).

Based on the foregoing, I find that that the parents have not met their burden regarding the unilateral placement of the student at the FA for the 2012-2013 school year and the 2013-2014 school year."

21

*Cent. Sch. Dist.*, 431 Fed. App'x. 12, 16 (2d Cir. 2011), the Second Circuit Court of Appeals held that in applying the established appropriate placement standard – i.e., whether parents had demonstrated that their unilateral placement of the student provided "educational instruction specifically designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction" – it was appropriate to focus the placement analysis "on a review of the student's particular needs related to his disability" and the manner in which the private school's program was "designed to address those needs at the time the unilateral placement with made." The Court explained that its "inquiry in assessing a particular placement's appropriateness must focus not on the general benefits a school may impart but rather on the degree to which it addresses a student's *particular* needs." *Davis*, 431 Fed. App'x. at 16 (*italics* in original). See also *Weaver*, 2011 WL 3962512, at *5 (citing *Gagliardo,* 489 F.3d at 115, "[t]he ultimate question is whether the private placement 'provides education instruction *specifically* designed to meet the *unique* needs of a handicapped child.'"[*Italics* in original]).

The plaintiffs bear the burden of proof in this regard. *Frank G.,* 459 F.3d at 364.  That burden was clearly not met, as the IHO found that there was no evidence presented that services specially designed to permit K.P. to become emotionally and socially stable so as to benefit from instruction were provided by the Franklin Academy. *Hardison,* 773 F.3d at 387-88; *Ward ex rel. A.W. v.Bd. of Educ. of Enlarged City School Dist of Middletown, N.Y.*, 568 F.App'x 18, 22 (2d Cir. 2014); *Gagliardo*, 489 F.3d at 114*; Thies v. N.Y. City Bd. of Educ.*, 07 Civ 2000 (RMB), 2008 WL 344728, at *3 (S.D.N.Y. Feb. 4, 2008); *Green v. N.Y. City Dep't of Educ.*, 07 Civ 1257 (PKC), 2008 WL 919609 (S.D.N.Y. Mar. 31, 2008); *Werner v. Clarkstown Cent. Sch. Dist.*, 363 F. Supp. 2d 656, 660 (S.D.N.Y. 2005).

While the restrictive non-mainstreaming nature of the Parent's private placement of K.P. plays less of a role than where the restrictive placement is pursuant to an IEP, it is nonetheless a consideration for the Court (as it was for the IHO) in determining whether a unilateral placement is appropriate. See *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 837 (2d Cir. 2014) ("""[I]t is nonetheless proper for a court to consider the restrictiveness of the private placement *as a factor* when determining the appropriateness of the placement.") and *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 104 (2d Cir. 2000) ("Because M.S. chose a private school for S.S. that educated learning disabled students *only,* M.S. bears the burden of proving that such a restrictive, non-mainstream environment was needed to provide S.S. with an appropriate education.").

In the event that Court should need or wish to consider the issue, both administrative review officers and courts are required to evaluate the equities in considering a tuition reimbursement claim such as that in the instant case. *Florence County Sch. Dist. Four v. Carter ex rel. Carter,* 510 U.S. 7, 12, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).

The IHO determined that a balancing of the equities did not favor the granting of tuition reimbursement to the Parent, based primarily upon the Parent having never suggested that a residential placement (such as the Franklin Academy in which the Parent unilaterally placed K.P.) was required for K.P. to secure an appropriate education and the Parent having kept secret her intent and actions in arranging the prior enrollment of K.P. at the Franklin Academy until disclosing his enrollment at the District's August 30, 2012 Committee on Special Education ("CSE") meeting at which K.P.'s 2012-13 IEP, which the Parent promptly rejected, was finally developed. *IHO Decision at pages 70-71.*

Together with the evidence that indicated that the Parent left it up to K.P. as to whether he would attend the Franklin Academy during the 2012-13 school year rather than the program

23

proposed by the District's IEPs, the IHO could credibly conclude that the Parent's actions reflected an effort to keep secret her intent to enroll K.P. in a residential program and her pre-determination by the summer of 2012 to reject the District's proposed 8th grade program eventually finalized at the August 30, 2012 CSE meeting and to enroll K.P. at the Franklin Academy for the 2012-13 school year. Under the circumstances, the IHO properly concluded that the equities foreclosed tuition reimbursement to the Parent. See *A.H. v. New York City Dep't of Educ.,* 652 F. Supp. 2d 297, 312-13 (E.D.N.Y. 2009) *aff'd in part, rev'd in part on other grounds and remanded sub nom. A.H. ex rel. J.H. v. Dep't of Educ. of City of New York*, 394 F. App'x 718 (2d Cir. 2010); *Thies*, 2008 WL 344728, at *4; *Carmel Cent. Sch. Dist. v. V.P. ex rel. G.P.*, 373 F. Supp. 2d 402, 417-18 (S.D.N.Y. 2005) *aff'd sub nom.* 192 F. App'x 62 (2d Cir. 2006); *Werner v*, 363 F.Supp.2d at 660-661[11]; see also *T.Y.*, 584 F.3d at 420 ("The parents' actions suggest that they seek a 'veto' over school choice, rather than 'input'--a power the IDEA clearly does not grant them.").

## CONCLUSION

For the reasons set forth herein, the Parent's motion in the nature of one for summary judgment should be denied in all respects, the administrative decisions below should be affirmed, the Complaint should be dismissed with prejudice and the District should be granted such other and further relief as to the Court may seem just and proper.

---

[11] "I would agree with the IHO that the parents are not equitably entitled to reimbursement. It appears that plaintiffs' purported cooperation with the CSE concerning a placement for JW for the 2002-2003 school year was a sham. . . . Obviously, what went on here was that the parents decided to send a troubled son to private school in September 2002, found a school they liked [with no regard whatever for what his special education needs might be, because there had as yet been no assessment and no determination about his needs], got their son accepted at the school, and then took steps to try to get the District to pay for the boy's private school education. The equities are clearly not on their side."

DATED:        October 7, 2015

                              Respectfully Submitted,

                              SHAW, PERELSON, MAY & LAMBERT, LLP
                              Attorneys for the Defendant


                              By:_____/s/_____
                              MARK C. RUSHFIELD (MCR 0231)
                              Of Counsel to the Firm
                              Office and P.O. Address
                              21 Van Wagner Road
                              Poughkeepsie, New York 12603
                              845-486-4200
                              mrushfield@shawperelson.com