Law Office of Peter D. Hoffman, P.C.
Hope Harris, *Pro Hac Vice*
Peter D. Hoffman (PH -8306)
Nikki D. Woods (NW -1380)
Attorneys for Plaintiffs
200 Katonah Avenue
Katonah, NY 10536
(914) 232-2242   phone
(914) 232-2245   facsimile
hh@pdhoffmanlaw.com   e-mail

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M.P., Individually and On Behalf of K.P.[1], a minor under the age of 18 years,<br><br>       Plaintiffs,<br>  - against -<br><br>CARMEL CENTRAL SCHOOL DISTRICT,<br><br>       Defendant. | 15 Civ. 03432 (VLB)<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

[1] Plaintiffs are not expressly named herein by their given names because of the privacy guarantees provided in the IDEA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. 1232(g) and 34 C.F.R. 99 (hereinafter "FERPA"). All student parties and actors herein are listed by pseudonym. This is done to protect their privacy pursuant to and in the spirit of FERPA. Whereas this action will require the inspection of student records of all student parties herein, Plaintiffs herein seek to protect the identity of all listed student parties by using pseudonyms.

# **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT……………………………………………...1

II. STATEMENT OF FACTS…………………………………………………...1

III. ARGUMENT…………………………………………………………………1

    POINT I: THE PLAINTIFF HAS STANDING TO BRING THIS ACTION……….1

    POINT II: THE DETERMINATION OF THE STATE REVIEW OFFICER
            AND IMPARTIAL HEARING OFFICER SHOULD BE
            OVERTURNED BY THIS COURT……………………………………...3

        A. The IHO and SRO Should Not be Afforded Deference…..3

        B. Procedural Violations Denied K.P. FAPE………………...4

        C. The 2012-13 and 2013-14 IEP's Were Substantively
           Inappropriate and Did Not Offer K.P. a FAPE……………6

        D. Franklin was an Appropriate Placement for K.P………….9

        E. The Equities Favor Plaintiffs……………………………10

IV. CONCLUSION……………………………………………………………..10

# TABLE OF AUTHORITIES

*A.D. v. New York City Dep't of Educ.*,
    2013 U.S. Dist. LEXIS 38757, 34 (S.D.N.Y. 2013)............................................6

*Arlington Central School District v. D.K. and K.K. obo C.K.*,
    2002 U.S. Dist. LEXIS 21849, 27 (S.D.N.Y. 2002)........................................7-8

*C.F. ex rel. R.F. v. N.Y.C. Dept. of Educ.*,
    746 F. 3d 68 (2nd Cir. 2014)...............................................................5, 6

*County School Board of Henrico County, Virginia v. Z.P.*,
    399 F. 3d 298 (4th Cir. 2004)..................................................................8

*Emery v. Roanoke City Sch. Bd.*,
    432 F. 3d 294 (4th Cir. 2005)...................................................................2

*E.M. v. New York City Dep't of Educ.*,
    758 F. 3d 442 (2nd Cir. 2014)................................................................2, 3

*E.S. et al. v. Katonah Lewisboro School Central School District*,
    742 F. Supp. 2d 417 (S.D.N.Y. 2010),
    aff'd 2012 U.S. App. LEXIS 13811 (2nd Cir. 2012)..........................................8

*Gagliardo v. Arlington Central School District*,
    489 F. 3d 105 (2007).........................................................................3, 9

*Gregory K. v. Longview Sch. Dist.*,
    811 F. 2d 1307 (9th Cir. 1987)..................................................................3

*Grim v. Rhinebeck Cent. Sch. Dist.*,
    346 F. 3d 377 (2nd Cir. 2003)...................................................................4

*Harris v. District of Columbia*,
    561 F. Supp. 2d 63 (D.D.C. 2008).............................................................5

*Malone v. Nielson*,
    474 F. 3d 934 (7th Cir. 2007)...................................................................3

*M.H. ex rel. P.H. v. N.Y.C. Dep't of Educ.*,
    685 F.3d 217 (2nd Cir. 2012).........................................................3, 4, 6, 7, 9

*M.M. v. Sch. Dist.*,
    303 F. 3d 523 (4th Cir. 2002)...................................................................8

*Mrs. B. v. Milford Bd. of Educ.*,
    103 F. 3d 1114 (2nd Cir. 1997)..................................................................................9

*Ojai Unified Sch. Dist. v. Jackson*,
    4 F. 3d 1467 (9th Cir. 1993).......................................................................................4

*Piedmont Behavioral Health Center, LLC v. Stewart*,
    413 F. Supp. 2d 746 (S.D.W. Va. 2006).....................................................................3

*P.K. et al v. NYC Dep't of Education*,
    2013 U.S. App. LEXIS 10477, 11-12 (2nd Cir. 2013)................................................6

*R.E. v. N.Y.C. Dept. of Educ.*,
    694 F. 3d 167 (2nd Cir. 2012)................................................................................5, 7

*School Committee of the Town of Burlington Massachusetts v. Department of Education of*
    *the Common Wealth of Massachusetts*,
    471 U.S. 359 (1996)................................................................................................2, 4

*S.W. v. New York City Dep't of Educ.*,
    646 F. Supp. 2d 346 (S.D.N.Y. 2009).........................................................................2

*T.M. ex rel. A.M.*,
    752 F. 2d 160..............................................................................................................4

*Walczak v. Florida Union Free School Dist.*,
    142 F. 3d 119 (2nd Cir. 1998)............................................................................4, 6, 9

*Winkelman ex rel. Winkelman v. City Sch. Dist.*,
    550 U.S. 516, 127 S. Ct. 1994, 2001, 167 L. Ed. 2d 904 (2007)................................4

### <u>Statutes</u>

20 U.S.C. §1415(f)(3)(B)......................................................................................................5

34 C.F.R. §300.302................................................................................................................9

34 C.F.R. §300.511(d)...........................................................................................................5

I.   **PRELIMINARY STATEMENT**

To avoid duplication, Plaintiffs respectfully refer the Court to their Preliminary Statement on page 1 of their Memorandum of Law in Support of Summary Judgment[1].

II.  **STATEMENT OF FACTS**

To avoid duplication, Plaintiffs respectfully refer the Court to Plaintiff's Statement of Uncontroverted Facts[2] submitted with Plaintiff's Motion for Summary Judgment pursuant to Local Rule 56.1 for a full recitation of the facts relevant to this motion, as well as Plaintiffs' Memorandum of Law in Support of Summary Judgment and the administrative record.

III. **ARGUMENT**

   **POINT I:   THE PLAINTIFF HAS STANDING TO BRING THIS ACTION**

Defendant's argument that Plaintiff lacks standing must fail, as Plaintiff established standing. P MSJ MOL 4-7. M.P. suffered a financial injury in that she paid for K.P.'s tuition at Franklin in 2012-13 and 2013-14. *See* PSUF, ¶ 192 – 197; ECF Doc. No. 1, Exhibit 3. M.P.'s financial injury was caused by CCSD's failure to provide K.P. a FAPE and is redressable by ordering CCSD to reimburse M.P. for tuition. Defendant's argument that M.P. does not have standing because the funds she used to pay for tuition at Franklin came from an account that was owned by K.P.'s grandmother *at the time* is wrong. As power of attorney and sole beneficiary to this bank account, M.P. used money from the account to pay for K.P.'s tuition. At the time of her mother's passing, ownership of the account passed to M.P. Had the funds not been expended to pay for Franklin in 2012-13 and 2013-14, those funds would have remained in the account and passed to M.P. at that time. M.P. has clearly suffered a financial injury due to CCSD's denial of

---

[1] Plaintiff's Memorandum of Law in Support of Summary judgment submitted August 25, 2015 is hereinafter referred to as "P MSJ MOL" followed by the page number; Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary judgment is hereinafter referred to as "D MSJ MOL" followed by the page number..
[2] Plaintiff's Statement of Uncontroverted Facts is hereinafter referred to as "PSUF" followed by paragraph number.

FAPE sufficient to establish standing. *See* PSUF, ¶ 192 – 197; ECF Doc. No. 1, Exhibit 3.

The cases relied upon by Defendant are not from the Second Circuit. Defendant mistakenly relies on *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294 (4th Cir. 2005) to support its position that Plaintiffs here lack standing. This case was distinguished by this Court in *S.W. v. New York City Dep't of Educ.*, 646 F.Supp.2d 346 (S.D.N.Y., 2009). In *Emery,* the court found that any recovery would be a windfall. *Id.* In *S.W.* the court found that there would be no windfall to the plaintiff since the education had not yet been paid for. *Id.* at 359. Similarly, in *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442 (2d Cir. 2014), the Court found that the tuition payment that had been made on the student's behalf was a loan provided by the school to the plaintiff and, if she were to receive tuition reimbursement, there would be no windfall, as she would be obligated to repay the loan. *Id.* at 460. Here, like in the above cases, it cannot be said that M.P. would receive a windfall if her tuition payments to Franklin were reimbursed (PSUF, ¶ 192 – 197; ECF Doc. No. 1, Exhibit 3). The funds that were used to pay for K.P.'s tuition at Franklin would have passed to M.P. at her mother's death and, if Plaintiff is successful in this action, the funds will pass to M.P. through tuition reimbursement. This cannot be considered a windfall. Further, even if M.P. were not the beneficiary and her mother were still alive, there would still be no windfall to M.P., as the money would go back into the same account.

Even if there were no financial injury, this relief would redress the denial of FAPE by requiring the district "'to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.'" *S.W.*, 646 F.Supp.2d at 359, citing *School Committee of the Town of Burlington Massachusetts v. Department of Education of the Commonwealth of Massachusetts,* 471 U.S. 359, 370-371 (1996).. The Court in *E.M.* did not decide "whether the denial of a publicly funded FAPE, standing alone, is an injury that is

'redressable' by an order requiring the [district] to pay the child's private-school tuition." *Id.* at 456. The Court decided the case on narrower grounds but did not reverse the *S.W.* holding.

CCSD mistakenly relies on *Piedmont Behavioral Health Center, LLC v. Stewart*, 413 F. Supp. 2d 746 (S.D.W. Va. 2006), to support its position that Plaintiffs here lack standing. This Fourth Circuit case is distinguishable from the present facts because in that case the parties bringing suit under the IDEA were not claiming a denial of FAPE and therefore did not suffer an injury for standing purposes. This is clearly distinguishable from the present case, where Plaintiffs are claiming a denial of FAPE. Further, CCSD incorrectly cites to a Seventh Circuit case, *Malone v. Nielson*, 474 F. 3d 934 (7th Circ., 2007). This case is distinguishable from the present facts because in *Malone*, the parents had not expended resources for the child's private education whereas here, as explained above, M.P. suffered a financial injury in paying tuition at Franklin in 2012-13 and 2013-14 due to CCSD's denial of a FAPE. M.P. has standing to bring a claim for reimbursement of tuition paid to Franklin for the 2012-13 and 2013-14 school years.

      **POINT II:**    **THE DETERMINATIONS OF THE STATE REVIEW OFFICER AND IMPARTIAL HEARING OFFICER SHOULD BE OVERTURNED BY THIS COURT.**

      **A.**    **The IHO and SRO Should not be Afforded Deference.**

A state administrative finding does not merit deference unless it is "reasoned and supported by the record," *M.H. ex rel. P.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 241 (2nd Cir., 2012), *citing Gagliardo v. Arlington Central School District*, 489 F. 3d 105, 111-12 (2007). In *M.H.*, the Second Circuit agreed with the district court that the SRO's decision, which took only the Department of Education's evidence into account, did not warrant deference. *Id.* at 252. "How *much* deference to give state educational agencies . . . is a matter for the discretion of the courts[.]" *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1993) citing *Gregory K. v. Longview Sch. Dist.* 811 F.2d 1307, 1311 (9th Cir.1987). Therefore, this Honorable Court is also

free to accept or reject the findings of the administrative agencies. Here, the SRO did not address the second and third prongs of the *Burlington* test,[3] (SRO 22) and thus should not be afforded deference because the SRO's review was not "careful and thorough." *Walczak v. Florida Union Free School Dist.*, 142 F.3d 119, 129 (2d Cir., 1998). The IHO also did not address the third prong of the *Burlington* test (IHO 70). Further, the SRO's decision was not based on substantial evidence due to the SRO's failure to credit significant evidence clearly established by Plaintiffs at the Impartial Hearing. As the record will show, the SRO was wrong on the merits. Moreover, the SRO ignored or missed substantial testimony by Plaintiffs' witnesses and Plaintiff's exhibits. Like in *M.H.*, the SRO took only the District's testimony into account while ignoring that of the Plaintiffs. *M.H.* at 252. The SRO decision was not "careful and thorough," *Walczak* at 129, and gives no explanation for finding District testimony credible but not Plaintiff's. Plaintiffs request that this Court reject the SRO's findings "in whole," *Ojai* at 1473-1474.

### B. Procedural Violations Denied K.P. FAPE.

While it is true that "procedural errors do not in and of themselves render an IEP legally inadequate under the IDEA," *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003), the procedural violations committed by CCSD in this case led to a denial of FAPE in that they (1) "impeded the child's right to a free appropriate public education", (2) "significantly impeded the parents' opportunity to participate in the decision-making process" and (3) "caused a deprivation of educational benefits." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-26 (2007); *T.M. ex rel. A.M.*, 752 F.3d 145, 160 (2nd Circ., 2014).

---

[3] A district may be required to reimburse parents for their expenditures for private school educational services obtained for a student by the parents, if (1) the services offered by the district were inappropriate (2) the services selected by the parent were appropriate and (3) equitable considerations support the parent's claim *School Committee of the Town of Burlington Massachusetts v. Department of Education of the Commonwealth of Massachusetts*, 471 U.S. 359, 370 (1996).

Defendant argues CCSD's failure to perform an FBA did not deny K.P. a FAPE because the August 30, 2012 IEP adequately addressed K.P.'s behavioral issues (D SJ MOL 9). Defendant relies upon *R.E. v. N.Y.C. Dept. of Educ.*, 694 F.3d 167, 190-91 (2d Cir. 2012), which supports Plaintiffs' argument that the 2012-13 IEP did not offer K.P. a FAPE. In *R.E.*, the Court held that the failure to conduct an FBA "seriously impairs substantive review of the IEP because courts cannot determine exactly what information an FBA would have yielded and whether that information would be consistent with the student's IEP. The entire purpose of an FBA is to ensure that the IEP's drafters have sufficient information about the student's behaviors to craft a plan that will appropriately address those behaviors." *Id.* at 190, citing *Harris v. District of Columbia*, 561 F.Supp.2d 63, 68 (D.D.C.2008) ("The FBA is essential to addressing a child's behavioral difficulties, and, as such, it plays an integral role in the development of an IEP"). The Court held "when an FBA is not conducted, the court must take particular care to ensure that the IEP adequately addresses the child's problem behaviors." *Id.* Here, there is nothing in the 2012-13 IEP (D-10) that addresses K.P.'s behavioral needs. Further, although failure to conduct an FBA will not always lead to denial of FAPE, this "should not be read as approving the practice of routinely omitting an FBA. New York regulations do not permit this shortcut." *Id.* In light of CCSD's failure to conduct an FBA, a serious procedural violation that led to a denial of FAPE, this court should perform a careful analysis of the 2012-13 IEP in light of this failure.

Defendant's argument that Plaintiffs' procedural complaints are outside the scope of review must also fail (D SJ MOL 10). Defendant mistakenly argues that Plaintiffs do not meet the standard set out in *C.F. ex rel. R.F. v. N.Y.C. Dept. of Educ.*, 746 F.3d 68 (2nd Cir., 2014). Contrary to Defendant's argument, "the waiver rule limits only what may be raised 'at the due process hearing,' *id.* § 1415(f)(3)(B); see also 34 C.F.R. § 300.511(d).'" *Id.* Plaintiffs raised

procedural issues at the due process hearing and the IHO allowed this testimony (see, for example, T: 1277, T: 1280-81, T: 1274-75). The IHO specifically stated that, under the totality of the circumstances, Plaintiffs were allowed to establish their case that FAPE was not provided even if every deficit was not listed specifically in the complaint (T: 617-19). *See P.K. et al v. NYC Dep't of Education*, 2013 U.S. App. LEXIS 10477, 11-12 (2d Cir. 2013); *see also M.H. et al*, 2012 U.S. App. LEXIS 13394 at **85. Since this testimony was not precluded at the due process hearing, there is no reason why this testimony now must be precluded at the stage of judicial review. Further, the IHO did address the merits of Plaintiff's alleged procedural violations in her Findings of Fact and Decision (see, for example, IHO 57, 62, 64), providing this court with a "record for review." *C.F.* at 78. Finally, to say that the alleged procedural violations do not reach the "heart of the dispute," is simply preposterous. *Id.* The crux of Plaintiff's argument is that CCSD's procedural violations contributed to its failure to provide FAPE to K.P.

### C. The 2012-13 and 2013-14 IEP's were Substantively Inappropriate and Did Not Offer K.P. a FAPE.

"[A] school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." *A.D. v. New York City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 38757, *34 (S.D.N.Y. Mar. 19, 2013). To determine whether a student is likely to progress, courts "examine the record for any 'objective evidence' indicating whether the child is likely to make progress or regress under the proposed plan." *Walczak* at 130 (citation omitted). Here, Plaintiffs submitted ample objective evidence indicating that K.P. would have regressed in the proposed programs (see, for example, D-36, p. 4; T: 1682, 1582-83; PSUF ¶49-51), which the SRO ignored, thus limiting the amount of deference due to the SRO. *See M.H.* at 252.

Further, contrary to Defendant's argument that the IHO and SRO were proper in

considering evidence not specified in the IEP, testimony "may only explain or justify what is listed in the written IEP. Testimony may not support a modification that is materially different from the IEP, and thus a deficient IEP may not be effectively rehabilitated or amended after the fact through testimony regarding services that do not appear in the IEP." *R.E.* at 185. This rehabilitation is exactly what was done here. For example, Dr. Gorlitsky's testimony that a behavioral consultant would be available is not documented in the IEP (D-10, T: 647), which was clearly an attempt by the District to use testimony to add services to the IEP that were not actually listed on the IEP. M.P. could not have relied upon Dr. Gorlitsky's retrospective testimony concerning a behavioral consultant when reviewing the IEP given the fact that the IEP did not state that a behavioral consultant would be available, or that an FBA or BIP would be implemented. Contrary to Defendant's argument that omitting an FBA from the IEP was "harmless error" (D MSJ MOL 14), the CSE simply failed to include an FBA on K.P.'s IEP and, in fact, never performed an FBA. It cannot be harmless error when the service was never performed. Altman's testimony concerning the actual size of the 2012-13 GFMS class was also retrospective. Altman was not explaining or justifying the class size, but rather, she was altering the class size as it is clearly written on the IEP. The IEP stated the size of the GFMS class is 12:1+2 (D-8, D-9, D-10) and it is clearly retrospective to analyze what the actual class size ended up being as opposed to the class size written on the IEP in determining appropriateness. *Id.*

    Defendant argues that the IEP's were substantively appropriate for K.P. but ignores the testimony and evidence submitted by Plaintiffs that shows the program was inappropriate. In *Arlington Central School District v. D.K. and K.K. obo C.K.*, 2002 U.S. Dist. LEXIS 21849, *27 (S.D.N.Y. 2002), the District Court found that the proposed IEP was not reasonably calculated to confer educational benefit on C.K., noting that the expert reports presented by the parents

indicated that the IEP was not sufficiently tailored to C.K.'s needs to enable him to progress. Here, K.P. was evaluated by Dr. Rissenberg (T: 1230), a Neuropsychologist with a private practice specializing in adult and pediatric clinical neuropsychology (T: 1558; PSUF ¶ 132-133). Despite the information from Dr. Rissenberg's report and input at the May 2012 CSE (PSUF ¶ 134-138). In 2013-14 CCSD ignored input on K.P.'s progress at Franklin (T: 719, 746-47, 1324-25, 1616-21, 2327-28). *See E.S. et al. v. Katonah Lewisboro Central School District*, 742 F. Supp. 2d 417, 439-40 (S.D.N.Y. 2010), *aff'd* 2012 U.S. App. LEXIS 13811 (2nd Cir. 2012) (S.D.N.Y. 2010). CCSD failed to place K.P. in a program that provides emotional and social support. Without addressing K.P.'s medical diagnosis of emotional dysregulation, the IEP could not be reasonably calculated to confer educational benefit.

Defendant argues that Dr. Rissenberg is not entitled to deference. D MSJ MOL 17. However, based on Dr. Rissenberg's background (PSUF ¶ 132-133), her opinions must be afforded deference and her neuropsychological report (D-36) must be taken into account as an expert report in determining whether the proposed IEP was reasonably calculated to confer educational benefit. *Arlington* at *27. Further, based on her career as an educator (P-Z; PSUF ¶ 133), she deserves deference as a professional educator. *M.M. v. Sch. Dist.*, 303 f.3d 523, 533 (4th Circ. 2002) ("administrative officers . . . must give appropriate deference to the decisions of professional educators"); *County School Board of Henrico County, Virginia v. Z.P.*, 399 F.3d 298, 307 (4th Cir. 2004) ("[A]t all levels of an IDEA proceeding, the opinions of the professional educators are entitled to respect"). While Defendant argues that the District placement is appropriate because of opportunities for mainstreaming, D MSJ MOL 20, he ignores evidence that K.P. cannot be appropriately educated in the mainstream. D-36; T: 1582-83, 1591-92 1601-02, 1606, 1628, 1682; PSUF ¶49-51, 134-139.

### D. Franklin was an Appropriate Placement for K.P.

To avoid duplication, Plaintiffs respectfully refer the Court to their Memorandum of Law in Support of Summary Judgment. P MSJ MOL 21-24. No deference is owed to the SRO, as she did not rule on this issue (SRO 22). The IHO erred in determining Franklin was not appropriate (IHO 70). The IHO's analysis of this issue was not careful and goes against the weight of the evidence. Thus, the IHO should not be afforded deference by this Court. *M.H.* at 241; *Gagliardo* at 114. The record shows K.P. made academic and social progress at Franklin and lacks evidence that K.P. regressed there. The IHO offers no reasoning for her finding that Plaintiffs presented no evidence to establish Franklin met K.P.'s unique needs and ignores testimony by Franklin staff (IHO 70). The evidence is against the IHO's finding that the interventions of the 504 plans were for all students at Franklin (IHO 70; D-117; P-CC; T: 1854, 1968, 2194-96; PSUF ¶ 187, 222-223). Plaintiffs disagree with the IHO's finding of limited progress in K.P.'s social and emotional problems (IHO 70), as M.P., Ms. Bazemore, Dr. Gorlitsky, and Dr. Rissenberg all testified that K.P. made progress at Franklin (PSUF ¶ 213-215, 224, 226 – 234, 236. Contrary to Defendant's argument that Franklin is inappropriate because of no mainstreaming, a residential placement is necessary for K.P. to receive a FAPE and is therefore the Least Restrictive Environment. *See* 34 C.F.R. §300.302; *Mrs. B. V. Milford Bd. Of Educ.*, 103 F. 3d 1114, 1122 (2nd Cir. 1997); *Walczak* at 122. K.P.'s need for a residential placement is evidenced in Dr. Rissenberg's report and testimony, M.P.'s testimony, and K.P.'s history of academic failure (PSUF ¶ 188-193; PPHB 2-19, 26-28; P-Y, p. 10). It is appropriate for K.P. to have no exposure to regular education students because his social issues, Autism, and emotional dysregulation make it impossible for him to learn in instructional classes. The residential placement addresses K.P.'s social issues, executive functioning, and processing speed. While CCSD's IEP's failed to provide supports for executive functioning and processing speed, Franklin's program was

specifically developed and structured to address these issues daily, which is essential to improving functioning in these areas and allowing him access to his education. (T: 2259-60). Without such attention, K.P.'s education suffered prior to Franklin (D-14-17, D-23, D-36; T: 261, 284-85, 1198-99, 1200, 1210-12, 1214-15, 1222, 1226-27).

### E. The Equities Favor Plaintiffs.

To avoid duplication, Plaintiffs respectfully refer the Court to their Memorandum of Law in Support of Summary Judgment (P MSJ MOL 24-25). It is not true that M.P. acted inequitably and kept her intention to enroll K.P. at Franklin secret. M.P. made numerous attempts to participate in formulating an appropriate IEP, providing all documentation and attending all but one CSE meeting (T: 1326, 1337), attempting to visit GFMS (PSUF ¶ 101- 107), providing notice of intent to place K.P. at Franklin at District expense (T: 348, 2113), and making Dr. Rissenberg available for CSE meetings (T: 1232). However, CCSD did not reciprocate this cooperation. The CSE was not forthcoming about referrals, did not send out referrals despite promising to do so (IHO 58; D-63; T: 269), and did not allow M.P. to visit GFMS in action prior to her decision (PSUF ¶ 101- 107). Defendant's contention that K.P. made the decision to attend Franklin is untrue. K.P. had input but the ultimate decision was M.P.'s (T: 1269, 1462).

## IV. CONCLUSION

To avoid duplication, Plaintiffs respectfully refer the Court to their Memorandum of Law in Support of Summary Judgment. P MSJ MOL 25. As the prevailing party, Plaintiffs request leave to apply for attorney's fees and costs.

Dated: October 28, 2015
       Katonah, NY

                          Hope H. Harris (*Pro Hac Vice*)
                          LAW OFFICE OF PETER D. HOFFMAN, P.C.
                          Attorneys for Plaintiffs
                          200 Katonah Avenue
                          Katonah, NY 10536
                          Phone (914) 232-2242