UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
M.P., Individually and as Parent of K.P., a :
minor under the age of 18 years, :
                 Plaintiff, : **OPINION AND ORDER**
:
v. : 15 CV 3432 (VB)
:
CARMEL CENTRAL SCHOOL DISTRICT, :
                 Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff M.P. ("Parent") is the mother of a child with a disability. The child, K.P., attended Franklin Academy ("Franklin"), a private boarding school, for the 2012-13 and 2013-14 school years. Parent alleges she enrolled K.P. at Franklin because her local public school district, the Carmel Central School District (the "District"), failed to provide K.P. with a free appropriate public education ("FAPE"), in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. In this action, Parent seeks an order requiring the District to reimburse her for K.P.'s tuition for those two school years.[1]

    Parent has moved for summary judgment. (Doc. #17). For the following reasons, the motion is DENIED.

    The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

I.    Statutory Framework

    The IDEA was enacted to promote the education of disabled children. 20 U.S.C. § 1400(d)(1)(A); see Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S.

---

[1] Although Parent seeks reimbursement of K.P.'s "tuition and board expenses" at Franklin (Doc. #17), the Court will refer to those costs collectively as "tuition."

1

176, 179 (1982) (interpreting predecessor statute to IDEA). States receiving public funds are required to provide a FAPE to children with disabilities. 20 U.S.C. § 1412(a)(1)(A). Public school districts must provide "'special education and related services' tailored to meet the unique needs of a particular child, [which are] 'reasonably calculated to enable the child to receive educational benefits.'" Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998) (quoting Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. at 207).

The IDEA requires states to create an individual education plan ("IEP") for each disabled student. See 20 U.S.C. § 1412(a)(4); see also Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 363 (2d Cir. 2006) ("The key element of the IDEA is the development of an IEP for each handicapped child."). The IEP is a "comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs." Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 368 (1985).

If the state fails to provide a FAPE to a disabled child, the child's parents may enroll the child in a private school "at their own financial risk" and seek reimbursement for the cost of the private school from the local school district. Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. at 369-70, 374, 397; 20 U.S.C. § 1412(a)(10)(C). In New York, parents seeking reimbursement must first file a due process complaint challenging the appropriateness of the IEP. FB v. N.Y.C. Dep't of Educ., 923 F. Supp. 2d 570, 577 (S.D.N.Y. 2013). An impartial hearing officer ("IHO") will then hold a hearing on the parents' complaint and issue a decision. See N.Y. Educ. Law § 4404(1). The IHO's decision may be appealed to a State Review Officer ("SRO"). See id. § 4404(2); see also 20 U.S.C. § 1415(g). The SRO's decision may in turn be challenged through an action in federal court. See 20 U.S.C. § 1415(i)(2)(A).

II.     Factual Background

K.P. is seventeen years old and resides in Patterson, New York. He began receiving special education services during the 2007-08 school year, when he was in fourth grade.

In April 2012, K.P. underwent a neuropsychological assessment performed by Marian Rissenberg, Ph.D. Dr. Rissenberg found K.P. was prone to "emotional dysregulation," or "mood instability," meaning he misperceives comments and actions as being "directed at him in a hostile way," and becomes "so upset that he [i]sn't able to do anything else." (Tr. 1581-83).[2] He is "not responsive to reason, to any efforts at calming" him down, and "has a tendency to ruminate" about those incidents. (Id. at 1582). Dr. Rissenberg concluded her findings were "consistent" with K.P. having "a mild autism spectrum disorder, along with some mood instability, in the context of above average intellectual capacity." (Ex. 36).[3]

In May 2012, the District's Committee on Special Education ("CSE") met to begin developing K.P.'s IEP for the 2012-13 school year. Parent attended the meeting and asked about the possibility of placing K.P. in a program outside the District. The CSE chairperson offered to perform a program search. An initial IEP was created on May 10, 2012. This IEP was not meant to be final, as the CSE intended to "reconvene to finalize placement recommendations." (Ex. 8).

The CSE met again in June 2012. Parent also attended and reiterated her desire for an out-of-district program search. The CSE did not make a placement recommendation at the June 2012 meeting, as it "wanted to further discuss a program search" and wanted K.P. to visit the District's middle school, which the District wanted Parent to consider as a placement for K.P. (SRO Decision at 13 (internal quotation marks omitted)). Another IEP was prepared for the June

---

[2]   Citations to "Tr." refer to the transcript of the proceedings before the IHO.

[3]   Citations to "Ex." refer to exhibits in the administrative record.

3

2012 CSE meeting. The June 2012 IEP, like the May 2012 IEP, noted the CSE would "reconvene to finalize placement recommendations." (Ex. 9).

Although the District "started to have contact with out-of-district placements to initially determine whether openings existed," the CSE did not apprise Parent of its efforts to explore out-of-district programs for K.P. (SRO Decision at 13 (internal quotation marks omitted)).

On July 8, 2012, Parent signed an enrollment contract with Franklin. At that point, she fully "committed" to sending K.P. to Franklin for the 2012-13 school year. (Tr. 2116).

Despite enrolling K.P. at Franklin in July 2012, Parent attended the next CSE meeting, which took place on August 30, 2012. At the meeting, K.P.'s IEP was finalized for the 2012-13 school year.

The August 2012 IEP "reflects the diagnoses reported in the April 2012 neurological assessment [by Dr. Rissenberg], including mild autism spectrum disorder along with some mood instability, in the context of above average intellectual capacity." (SRO Decision at 15). "The August 2012 IEP also indicated that [K.P.] struggled socially and emotionally." (Id.). The August 2012 IEP recommended placing K.P. at the District's middle school in a "12:1+2 special class," meaning he would be in a class of twelve students, with one teacher and two teaching assistants. The CSE chairperson believed K.P.'s "social/emotional needs could be met in the recommended 12:1+2 special class placement," and the District's psychologist felt K.P.'s "social/emotional needs would be addressed 'through a small class' like the 12:1+2 special class." (Id. at 16). The August 2012 IEP also "included approximately five annual goals that targeted [K.P.'s] social/emotional skills, and included related services of individual and group psychological counseling, parent counseling, and psychological counseling consultation services to school personnel on behalf of the student." (Id.).

4

By letter dated August 30, 2012, Parent rejected the August 2012 IEP and notified the District K.P. would attend Franklin for the 2012-13 school year. He began classes at Franklin on August 28, 2012.

On January 8, 2013, Parent signed an enrollment contract with Franklin for the 2013-14 school year and paid a non-refundable $5,000 deposit. Although the CSE had not yet met to begin developing K.P.'s IEP for the 2013-14 school year, Parent felt K.P. "needed stability and he needed to know where he was going so [she] made the deposit." (Tr. 2144).

In May 2013, the CSE met to develop K.P.'s IEP for the 2013-14 school year. An IEP was created on May 14, 2013.

Parent rejected the May 2013 IEP on June 18, 2013, and notified the District K.P. would attend Franklin for the 2013-14 school year, which he did.

Parent paid K.P.'s tuition for the 2012-13 and 2013-14 school years using money from a checking account in the name of Norma T. Fund, Parent's now-deceased mother. Although the account was in her mother's name, Parent had power of attorney over the account. Parent asserts—and the District does not dispute—the money in the account was "mine to use at all relevant times" (Compl. Ex. 3); Parent "share[d]" the account with her mother; and any mail associated with the account goes to Parent. (Tr. 2124, 2133).

On June 27, 2013, Parent filed a due process complaint, alleging the District failed to offer K.P. a FAPE for the 2012-13 and 2013-14 school years.[4] Parent sought tuition reimbursement for those years, totaling $159,600. (Ex. DD).

IHO Linda Agoston held a hearing over sixteen days and received more than 100 exhibits into evidence. The hearing ultimately concluded on September 12, 2014.

---

[4] Parent also alleged denial of a FAPE for the 2011-12 school year, but later withdrew that claim.

On November 22, 2014, the IHO issued a 71-page decision denying Parent's claim for tuition reimbursement.

Parent appealed the IHO's decision to the SRO, which affirmed the IHO's decision on February 4, 2015.

Parent commenced this action on May 4, 2015.

## DISCUSSION

I.   Standard of Review

Motions for summary judgment usually resolve IDEA cases in federal court. See Viola v. Arlington Cent. Sch. Dist., 414 F. Supp. 2d 366, 377 (S.D.N.Y. 2006). But a summary judgment motion in an IDEA case is not a typical summary judgment motion; in the IDEA context, the motion functions as an appeal from an administrative decision. T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir. 2009). Thus, unlike in an ordinary case, in an IDEA case the existence of a genuinely disputed issue of material fact will not necessarily defeat the motion for summary judgment. Viola v. Arlington Cent. Sch. Dist., 414 F. Supp. 2d at 377.

In an action under the IDEA, the Court (i) reviews the record of the administrative proceedings; (ii) hears additional evidence at the request of a party; and (iii) grants such relief as it deems appropriate based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C); see Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380 (2d Cir. 2003).

The standard of review for IDEA cases has been characterized as "modified de novo." M.R. v. South Orangetown Cent. Sch. Dist., 2011 WL 6307563, at *6 (S.D.N.Y. Dec. 16, 2011). Although the court must engage in an independent review of the record and make a determination based on a preponderance of the evidence, its review of state administrative decisions is limited. See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S.

at 205-06; Walczak v. Fla. Union Free Sch. Dist., 142 F.3d at 129.  The Second Circuit has cautioned that the IDEA requires "substantial deference to state administrative bodies on matters of educational policy."  Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 191 (2d Cir. 2005).  Thus, the court must be mindful "that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy," Walczak v. Fla. Union Free Sch. Dist., 142 F.3d at 129 (quotation omitted), and should not "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]."  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. at 206.  "Deference is particularly appropriate" when the SRO's review has been "thorough and careful." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d at 129.

As the Second Circuit clarified in M.H. v. New York City Department of Education, "the district court's determination of the persuasiveness of an administrative finding must also be colored by an acute awareness of institutional competence and role."  685 F.3d 217, 244 (2d Cir. 2012).  Courts should afford more weight to SRO determinations when they involve the substantive adequacy of an IEP.  Id. (citing Cerra v. Pawling Cent. Sch. Dist., 427 F.3d at 195).  The Court also affords more deference to the SRO when the decision is "grounded in thorough and logical reasoning," and when the Court's "review is based entirely on the same evidence as that before the SRO."  Id.

II.   Standing

As an initial matter, the District contends Parent lacks standing to seek tuition reimbursement because the money used to pay Franklin for the 2012-13 and 2013-14 school years came from her mother's checking account.  Thus, the argument goes, because Parent did not spend her own money, she did not suffer the "injury in fact" needed to establish standing.

See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Standing, of course, "is a threshold matter [a court] must resolve before reaching the merits."  Anderson Grp., LLC v. City of Saratoga Springs, 805 F.3d 34, 44 (2d Cir. 2015) (internal quotation marks omitted).

Parent has standing.

Although the checks for K.P.'s 2012-13 and 2013-14 tuition were drawn on Parent's mother's account, Parent has shown that the money in that account belonged to her (Parent). In an affidavit, Parent asserts that "[t]he money in the Norma T. Fund checking account, over which I had power of attorney and was beneficiary to at all relevant times, has been mine to use at all relevant times."  (Compl. Ex. 3) (emphasis added).  She also testified before the IHO that she "share[d]" the account with her mother, and that any mail associated with the account went to Parent.  (Tr. 2124, 2133).  The District does not dispute these assertions.  The Court therefore concludes Parent paid K.P.'s tuition with her own money.  And it is well-established that "[e]ven a small financial loss is an injury for purposes of Article III standing."  NRDC, Inc. v. U.S. FDA, 710 F.3d 71, 85 (2d Cir. 2013) (citing United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n.14 (1973)).

Accordingly, having determined Parent has standing, the Court will consider whether she is entitled to tuition reimbursement for the 2012-13 and 2013-14 school years.

III.    Tuition Reimbursement

Claims for tuition reimbursement are "governed by the Burlington/Carter Test, which looks to (1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs; and (3) a consideration of the equities."  C.F. v. N.Y.C. Dep't of Educ., 746 F.3d 68, 76 (2d Cir. 2014); see generally Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. at

369; <u>Florence Cty. Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 12 (1993). The school district has the burden of proving its IEP offered the student a FAPE. <u>R.E. v. N.Y.C. Dep't of Educ.</u>, 694 F.3d 167, 184 (2d Cir. 2012). If the district "fails to carry this burden, the parents bear the burden of establishing the appropriateness of their private placement and that the equities favor them." <u>Id</u>. at 185.

The Court will first address whether the District offered K.P. a FAPE for the 2012-13 and 2013-14 school years.

    A.    <u>FAPE</u>

To decide whether an IEP provided a FAPE, courts undertake a two-step inquiry. <u>See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. at 206-07. First, the court examines the procedural adequacy of the IEP, asking if "the state has complied with the procedures set forth in the IDEA." <u>R.E. v. N.Y.C. Dep't of Educ.</u>, 694 F.3d at 190 (quoting <u>Cerra v. Pawling Cent. Sch. Dist.</u>, 427 F.3d at 192). Importantly, "not every procedural error in the development of an IEP renders that IEP legally inadequate." <u>N.C. v. Bedford Cent. Sch. Dist.</u>, 300 F. App'x 11, 13 (2d Cir. 2008) (summary order) (quoting <u>Grim v. Rhinebeck Cent. Sch. Dist.</u>, 346 F.3d at 381) (brackets and internal quotation marks omitted). Violations of the IDEA's procedures amount to denial of a FAPE only if they "impede[] the child's right to a [FAPE]," "significantly impede[] the parents' opportunity to participate in the decisionmaking [sic] process regarding the provision of a [FAPE] to the parents' child," or "cause[] a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). In essence, the violations must cause prejudice. <u>See</u> <u>N.C. v. Bedford Cent. Sch. Dist.</u>, 300 F. App'x at 14.

Second, courts consider the substantive adequacy of the IEP by asking whether it was "reasonably calculated to enable the child to receive educational benefits." <u>Bd. of Educ. of</u>

Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. at 207.  To be substantively adequate, an IEP does not need to be "prescient enough to achieve perfect academic results."  D.F. v. Ramapo Cent. Sch. Dist., 430 F.3d 595, 598 (2d Cir. 2005) (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 992 (1st Cir. 1990)).  Indeed, a school district is not required to provide "every special service necessary to maximize each handicapped child's potential."  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. at 199.  Rather, an IEP is substantively adequate "if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement."  Cerra v. Pawling Cent. Sch. Dist., 427 F.3d at 195 (internal quotations and citations omitted).

Parent claims the IEPs for the 2012-13 and 2013-14 school years were both procedurally and substantively inadequate.  The Court will consider each IEP in turn.

    1.    2012-13 IEP

        a.    Operative IEP

The Court must first determine the operative IEP for the 2012-13 school year.  The SRO concluded the operative IEP was the August 2012 IEP.  (SRO Decision at 4 n.7).  Parent challenges this conclusion, arguing the Second Circuit's opinion in R.E. v. New York City Department of Education requires courts to "evaluate the adequacy of an IEP prospectively as of the time of the parents' placement decision," 694 F.3d at 195 (emphasis added).  In this case, that decision was made on July 8, 2012, when Parent signed Franklin's enrollment contract for the 2012-13 school year.  (Tr. 2116).  Thus, Parent maintains the June 2012 IEP is the operative IEP.

The August 2012 IEP is the operative IEP.

The principal issue in R.E. was whether a school district could defend the adequacy of an IEP by relying on "'retrospective testimony,' i.e., testimony that certain services not listed in the

IEP would actually have been provided to the child if he or she had attended the school district's proposed placement." 694 F.3d at 185. The Second Circuit concluded such testimony could not be used to "rehabilitate a deficient IEP," which must be judged by "the program actually offered in the written plan." Id. at 186-87. R.E. therefore did not specifically address whether, when measuring the adequacy of an IEP, a court is confined to the versions of the IEP created before the parents place their child in private school, even if the IEP was not finalized at that time.

R.E. did note, however, the IDEA "contains a statutory 30-day resolution period once a due process complaint is filed," during which time a school district may amend the IEP "without penalty" to remedy the defects alleged in the due process complaint. 694 F.3d at 187-88. "The adequacy of the IEP will then be judged by its content at the close of the resolution period." Id. Thus, R.E. teaches that the operative IEP is the IEP the school district chooses to defend at the end of the resolution period.

Here, the due process complaint was not filed until June 27, 2013, at which time the District declined to make any amendments and chose to defend the August 2012 IEP.

In any event, using the August 2012 IEP as the operative IEP in this case does not prejudice Parent, both because the District could have amended the June 2012 IEP during the resolution period in 2013 to include the revisions ultimately reflected in the August 2012 IEP, and because Parent rejected the August 2012 IEP. See E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist., 2008 WL 3930028, at *10 (N.D.N.Y. Aug. 21, 2008) ("[E]ven when finalized, the 2003-04 IEPs were rejected by the parents. As such, any delay in developing them did not prejudice CH's education.") (citations omitted), aff'd, 361 F. App'x 156 (2d Cir. 2009).

Accordingly, the Court will consider the adequacy of the August 2012 IEP.

        b.      Procedural Adequacy

Parent contends the District committed several procedural violations in developing the August 2012 IEP. (M.P. Br. at 11-15). But these alleged violations, whether considered individually or cumulatively, do not establish denial of a FAPE.

As an initial matter, the Court will not consider the alleged violations the SRO properly deemed "outside the permissible scope of review." (SRO Decision at 10 n.15 (citing, among other cases, N.K. v. N.Y.C. Dep't of Educ., 961 F. Supp. 2d 577, 584-86 (S.D.N.Y. 2013))).

Moreover, any procedural violations alleged to have occurred after July 8, 2012, did not cause Parent or K.P. any prejudice, as Parent committed to send K.P. to Franklin on July 8, 2012, the day she signed the enrollment contract. See Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d at 382 (no prejudice from alleged procedural violations when "there is no suggestion in the record that the [parents] would have altered their placement decision").

Parent's remaining procedural objections with respect to the August 2012 IEP—the District's alleged failure to consider out-of-district placements for K.P. and to inform Parent about the status of any program search—fare no better. The District did, in fact, "consider and discuss placement and program options for [K.P.]—including potential out-of-district programs." (SRO Decision at 14). The IDEA is satisfied "as long as the parents are listened to," E.F. v. N.Y.C. Dep't of Educ., 2013 WL 4495676, at *17 (E.D.N.Y. Aug. 19, 2013), and the district has not "flatly refused" to hear their concerns. T.K. v. N.Y.C. Dep't of Educ., 2016 WL 229842, at *2 (2d Cir. Jan. 20, 2016). And there is no suggestion the District's failure to keep Parent informed about potential out-of-district programs "deprived [her] of meaningful participation in the process" of developing the IEP. N.C. v. Bedford Cent. Sch. Dist., 300 F. App'x at 14.

Accordingly, the August 2012 IEP was procedurally adequate.

c.      Substantive Adequacy

The August 2012 IEP was also substantively adequate.

Parent contends the August 2012 IEP was substantively inadequate because it "did not take K.P.'s emotional dysregulation into account" and "failed to place K.P. in a program that provides emotional and social support." (M.P.'s Br. at 16-17 & n.13). But, in developing the August 2012 IEP, the District did consider and rely on Dr. Rissenberg's neuropsychological assessment (SRO Decision at 15), which discussed K.P.'s "emotional sensitivity and intensity" and his need for emotional and social support. (Ex. 36). As the SRO explained, the August 2012 IEP "reflects the diagnoses reported in the April 2012 neurological assessment, including mild autism spectrum disorder along with some mood instability, in the context of above average intellectual capacity." (SRO Decision at 15). "The August 2012 IEP also indicated that the student struggled socially and emotionally." (Id.).

In addition, the CSE chairperson testified K.P.'s "social/emotional needs could be met in the recommended 12:1+2 special class placement," and the District's psychologist testified "the student's social/emotional needs would be addressed 'through a small class' like the 12:1+2 special class." (SRO Decision at 16). The August 2012 IEP also "included approximately five annual goals that targeted [K.P.'s] social/emotional skills, and included related services of individual and group psychological counseling, parent counseling, and psychological counseling consultation services to school personnel on behalf of the student." (Id.).

The SRO therefore concluded the August 2012 IEP was reasonably calculated to enable K.P. to receive educational benefits. This decision is entitled to "particularly important" deference, Cerra v. Pawling Cent. Sch. Dist., 427 F.3d at 195, especially given that the decision

is "grounded in thorough and logical reasoning," and the Court's "review is based entirely on the same evidence as that before the SRO." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d at 244.

Accordingly, the August 2012 IEP was substantively adequate.

    2.    2013-14 IEP

The May 2013 IEP likewise was both procedurally and substantively adequate.

Parent's procedural objections to the development of the May 2013 IEP are unavailing. Parent committed to enrolling K.P. at Franklin for the 2013-14 school year when she signed the enrollment contract and paid a non-refundable deposit in January 2013—months before the alleged procedural violations occurred. Thus, such violations could not possibly have caused any prejudice. See Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d at 382.

Nor was the May 2013 IEP substantively deficient. Relying on E.S. v. Katonah-Lewisboro School District, 742 F. Supp. 2d 417 (S.D.N.Y. 2010), Parent contends the May 2013 IEP failed to offer K.P. a FAPE because the IEP "did not significantly change" from 2012 and, therefore, did not account for the progress K.P. had made at Franklin. (M.P. Br. at 21).

E.S. is distinguishable. There, the court held that an IEP did not provide a FAPE because, in formulating the IEP, the school district "never actually evaluated [the child's] academic needs after the 2006-2007 school year and integrated that information into a new IEP." 742 F. Supp. 2d at 442. Rather, "the CSE simply reprinted the unedited IEP" from the prior year. Id.

Here, however, the District did not merely "recycl[e] an old IEP" in creating the May 2013 IEP. E.S. v. Katonah-Lewisboro Sch. Dist., 742 F. Supp. 2d at 442. Indeed, the May 2013 IEP reflects that the District considered the progress K.P. had made at Franklin and adjusted his IEP accordingly. For example, the August 2012 IEP gave K.P. a goal of fostering and

maintaining two positive relationships with his peers. (Ex. 10). The May 2013 IEP states that "[t]he staff at Franklin Academy reported (3/2013) that [K.P.] . . . has developed fair relationships with peers and adults yet they were reported to be 'superficial'. They would like for him to develop deeper relationships with both staff and peers." (Ex. 12). Accordingly, the May 2013 IEP adjusted his goal to foster and maintain three "positive and meaningful relationships (i.e., sharing, being open and honest, identifying common interests, scheduling activities) with peers and adults." (Id.). It therefore cannot be said the District "failed to adjust K.P.'s 2013-14 IEP (D-12) to reflect [his] progress," as Parent contends. (M.P. Br. at 21).

Parent also contends the May 2013-14 IEP was substantively inadequate because (i) it would not improve K.P.'s executive functioning deficits and grow his homework independence; (ii) it placed K.P. in an inappropriate math program; and (iii) it recommended placing him in a special education program that was too large. Both the IHO and SRO disagreed, and these "fact-specific educational questions are precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." T.M. v. Cornwall Cent. School Dist., 752 F.3d 145, 169 (2d Cir. 2014) (internal quotation marks omitted).

Accordingly, the Court affirms the SRO's decision that the May 2013 IEP offered K.P. a FAPE.

B.  Appropriateness of Franklin and Balance of the Equities

Because the Court finds K.P.'s 2012-13 and 2013-14 IEPs were both procedurally and substantively adequate, the Court need not decide whether K.P.'s placement at Franklin was appropriate, or whether equitable considerations favor Parent.[5] See A.C. ex rel. M.C. v. Bd. of Educ. of The Chappaqua Cent. Sch. Dist., 553 F.3d 165, 173 (2d Cir. 2009).

---

[5]   The Court notes, however, that this case is distinguishable from T.K. v. New York City Department of Education, in which the Second Circuit concluded the equities favored the parents

## CONCLUSION

Plaintiff M.P.'s motion for summary judgment is DENIED.

The Court accordingly affirms the decision of the SRO and dismisses the complaint.

The Clerk is instructed to terminate the motion (Doc. #17) and close this case.

Dated: January 29, 2016
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

even though they, like Parent here, placed their child in a private school before an IEP had been finalized. In T.K., the Department of Education had made clear, prior to finalization of the IEP, it would not address the parents' concerns about the bullying of their child. 2016 WL 229842, at *2). Here, however, the District had not "flatly refused" to listen to Parent's complaints. Id.

16